[No. 21661.   Department Two.   May 16, 1929.]

BERT SHELTON, *Appellant, v.* KLICKITAT COUNTY, *Respondent.*[1]

*McMaster, Hall & Schaefer,* for appellant.
*F. A. Smith* and *John R. McEwen,* for respondent.

PARKER, J.—The plaintiff, Shelton, sought in the superior court for Klickitat county recovery from that county of the sum of $1,200 paid by him to the county as the purchase price of a quarter section of land sold and conveyed to him by the county after it had acquired the land through general tax foreclosure sale.   The county's demurrer to Shelton's complaint being, by the superior court, sustained, and Shelton electing not

[1]Reported in 277 Pac. 839.

to plead further, judgment of dismissal was accordingly rendered against him, from which he has appealed to this court.

Following allegations showing the prosecution by the county of a general tax foreclosure against the land resulting in final judgment ordering sale thereof, the complaint alleges:

"That, at the sale held pursuant to said tax foreclosure proceeding, no other bids having been received, the said property was duly sold to the county of Klickitat, and a proper conveyance made by the county treasurer to the said county.

"That, thereafter, to wit: on the 2nd day of November, 1925, the board of county commissioners of the county of Klickitat entered an order directing the county treasurer to sell the real property hereinabove described, and the county treasurer of said county proceeded to publish in due form, except as hereinafter alleged, a notice of sale of said real property to be made, commencing at the hour of 10 a. m. on the 12th day of December, 1925.

"That, pursuant to said notice of sale, the said county treasurer duly offered the said property for sale, and that the plaintiff became the purchaser thereof for the sum of twelve hundred dollars ($1,200); that thereafter, he duly paid the said sum to the said county treasurer and received from said county treasurer a due and proper conveyance of said real property, except as hereinafter alleged, executed on the 16th day of December, 1925.

"That the said real property, at the time of the beginning of the tax foreclosure proceeding, was located within a duly established drainage improvement district and was subject to the lien of a certain drainage improvement district assessment and installments thereof in a large sum, and that, at the time of the sale of said real property by said county treasurer to the plaintiff, the same remained subject to certain installments of the said assessment, amounting to a large sum not yet due at the time of said sale, and that

neither the notice of sale nor the deed given and executed in said proceeding so stated.

"That, at the time the plaintiff became the purchaser of the real property, he relied upon the terms of the notice of sale and deed above mentioned, and believed in good faith that the same was free and clear of the lien of the said drainage improvement assessment."

The complaint further alleges presentation of Shelton's claim of $1,200 to the county commissioners and its rejection by them. The prayer is for judgment against the county in the sum of $1,200, with interest.

Contention is made in behalf of Shelton, in substance, that the sale by the county to him is void, and that he did not acquire title by the county's deed to him given in pursuance of the sale, because neither the notice of sale nor the deed from the county to him contained any statement relative to drainage improvement assessments upon the land, and that therefore he is entitled to recover the purchase price. Counsel for Shelton invokes the following provisions of our drainage and diking improvement statute:

"Property subject to a drainage or diking or sewerage improvement district assessment, acquired by a county pursuant to a foreclosure and sale for general taxes, when offered for sale by the county, shall be offered for the amount of the general taxes for which the same was struck off to the county, together with all drainage or diking or sewerage improvement district assessments or installments thereof, due at the time of such resale, including maintenance assessments, and supplemental assessments levied pursuant to the provisions of section 4439-6, coming due while the property was held in the name of the county; and the property shall be sold subject to the lien of all drainage or diking or sewerage improvement district assessments or installments thereof not yet due at the time of such sale, and the notice of sale and deed shall so state." Rem. Comp. Stat., § 4439-4, as amended by Laws of 1923, p. 126 (Rem. 1927 Sup., § 4439-4).

At the time of the making of the sale and conveyance of the land from the county to Shelton, our general tax statute, referring to sections of Remington's Compiled Statutes, provided, in so far as need here be noticed, as follows:

"§ 11309. . . . The proceeds of any sale of any property acquired by the county by tax deed shall be justly apportioned to the various funds existing at the date of the sale, in the territory in which such property is located, according to the tax levies of the year last in process of collection."

"§ 11310. Real property hereafter or heretofore acquired by the several counties of the state of Washington for taxes shall be subject to sale by order of the board of county commissioners of the several counties of this state at any time after the counties shall have received a deed therefor, when in the judgment of the board of county commissioners they deem it for the best interests of the county to sell the same, and when the board of county commissioners desires to sell any property so acquired, they shall enter an order upon their records directing the county treasurer to sell such portions of such property as they may determine to sell from time to time, and it shall be the duty of the county treasurer upon receipt of such order to publish a notice of the sale of such property in a weekly newspaper printed and published in the county where the land is situated for three consecutive publications. . . ."

Section 11311 provided for the issuance of a deed in consummation of the sale, prescribing a form therefor, the granting portion of which, following recitals as to giving of notice, making of sale in pursuance thereof, payment of purchase price, and description of the property, reads as follows:

"Now, therefore, know ye that I, ........................................, county treasurer of said county of ...................................., state of Washington, in consideration of the premises and

by virtue of the statutes of the state of Washington, in such cases made and provided, do hereby grant and convey unto ........................................, ................ heirs and assigns, forever, the said real estate hereinbefore described, as fully and completely as the said party of the first part can by virtue of the premises convey the same.''

The prescribed form of deed does not contain a suggestion of warranty of title by the county as the grantor. Indeed, the granting words above quoted therefrom come near expressly disclaiming any such warranty. We do not find in our revenue statutes or in any other of our statutes any suggestion that the county shall in any respect warrant the title it purports to convey in pursuance of its sale of land acquired by it under a general tax foreclosure. Nor do we find in any of our revenue statutes or in any other of our statutes any duty imposed upon a county making such a sale, to refund the purchase price of the land because of failure of title in whole or in part passing to the grantee.

█ If this sale and conveyance by the county to Shelton was in legal effect a tax sale, then it seems clear that the rule of *caveat emptor* stands insurmountably in the way of Shelton's recovering from the county the purchase price, there being in this state no statute requiring any warranty in the deed of conveyance, or providing for repayment of the purchase price because of any defect in the proceeding leading up to the sale, or failure of title passing to the grantee by the deed. The rule is tersely stated in the text of 26 R. C. L. 435, as follows:

''It is held by the weight of authority that one who has purchased land at a tax sale cannot, without statutory authority, recover back the price paid from the municipality by which the money was received if it subsequently appears that the title acquired by him was invalid.''

The following decisions, among numerous others, abundantly support this view of the law: *American Inv. Co. v. Beadle County*, 5 S. D. 410, 59 N. W. 212; *Foster v. Malberg*, 119 Minn. 168, 137 N. W. 816; *Holland v. Hotchkiss*, 162 Cal. 366, 123 Pac. 258; *Arnold v. City of Augusta*, 118 Me. 399, 108 Atl. 332; *Lisso & Brother v. Police Jury of Natchitoches Parish*, 127 La. 283, 53 South. 566, 31 L. R. A. (N. S.) 1141, and note. Our own decision in *Phelps v. Tacoma*, 15 Wash. 367, 46 Pac. 400, holds to this view of the law.

Was this in legal effect a tax sale? We think it was. True, we have held that, upon a county becoming the purchaser at a tax foreclosure sale for want of other bidders, the county, upon the deed being issued to it in pursuance of such sale, acquires title in fee as against the owner. But we have also held, in harmony with the above quoted language of Rem. Comp Stat., § 11309, that the title thereby acquired becomes vested in the county, not in its proprietary capacity, but in trust for the state, for itself and for the other taxing municipalities within which the land is situated, with power and obligation on the part of the county to sell the land at some opportune time and justly apportion the proceeds to the state, municipal and other funds. *Gustaveson v. Dwyer*, 78 Wash. 336, 139 Pac. 194; 83 Wash. 303, 145 Pac. 458. This is but a part of the statutory tax collecting process, which process is not completed until such sale is finally made by the county, to the end that the proceeds thereof be apportioned as prescribed by § 11309, above quoted. Our late decision in *Tacoma v. Fletcher Realty Co.*, 150 Wash. 33, 272 Pac. 43, supports this view. In *Wilson v. Salt Lake County*, 57 Utah 274, 194 Pac. 125, the supreme court of Utah decided that case upon the theory that a sale by the county, of the same nature as is here involved, of land acquired by it at a general tax foreclosure sale,

was in legal effect a tax sale, and that therefore, there being no statute requiring or authorizing any warranty clause in the deed given by the county in consummation of the second sale, and no statute authorizing any refund of the purchase price upon failure of title, the doctrine of *caveat emptor* stood in the way of the purchaser and grantee recovering the purchase price paid by him to the county.

We are of the opinion that Shelton is not entitled to recover. The judgment is affirmed.

MITCHELL, C. J., MAIN, FRENCH, and MILLARD, JJ., concur.