## COLEBROOK GUARANTY SAVINGS BANK v. LAMBERT et al.

No. 24092.     April 30, 1935.

Burke & Trice, for plaintiff in error.

Finney & Cook, for defendant in error W. B. Lambert.

PER CURIAM. The parties occupy the same position in this court as they did in the trial court. The plaintiff, Colebrook Guaranty Savings Bank, a New Hampshire corporation, instituted the action in the district court of McCurtain county for personal judgment against the makers of a mortgage bond and for foreclosure of the mortgage given to secure the payment of the same. The makers of the bond and mortgage were made defendants, and were served and made default. The board of county commissioners (grantee in resale tax deed being McCurtain county) and W. B. Lambert, grantee in deed made by the chairman of the board of county commissioners, were made defendants and filed separate answers.

Plaintiff made the usual and necessary allegations for personal judgment and foreclosure of its mortgage, and in addition alleged that defendants, Lambert and the

board of county commissioners, claimed some right, title, and interest, the nature of which was alleged to be unknown, but that the right, title or interest claimed was subject and inferior to the mortgage lien of the plaintiff.

Defendant Lambert filed a separate answer wherein he admitted that the plaintiff was the owner and holder of the mortgage mentioned in the petition, and further alleged that on May 21, 1930, the county treasurer of McCurtain county, on behalf of the state of Oklahoma, conveyed the north half of the northeast quarter of section 27, township 6 south, range 26 east, to McCurtain county, said land being a part of the land described in plaintiff's petition and mortgage; and that on the 11th day of July, 1930, the county commissioners of McCurtain county, Okla., made and executed to the said Lambert a tax deed wherein and whereby they conveyed to the said Lambert the tract of land last mentioned; that the said deed was filed for record on July 14, 1930; and that immediately the said Lambert took possession of the land; that the consideration paid for said land was $100 and that said Lambert has done certain work and labor and made certain improvements on the land, so that the total amount expended for the land and improvements is $698.36. The board of county commissioners filed a separate answer which was in form a general denial.

Plaintiff filed its reply to the separate answer of the defendant Lambert, and alleged that the pretended deed mentioned in Lambert's answer was void on account of various defects in the tax proceedings anterior to the execution of the resale tax deed by the county treasurer to McCurtain county, as well as on account of defects in the procedure resulting in the execution of the deed to said defendant by the chairman of the board of county commissioners.

At the beginning of the trial plaintiff tendered into court the taxes, with interest, penalties, etc., for the years 1926 to 1931, inclusive, being the year for which the taxes became delinquent, which thereafter resulted in the resale tax deed, and for the years subsequent thereto.

Upon the issues made by the pleadings, the court placed the burden of proof upon the plaintiff, and the plaintiff, after excepting to the ruling of the court, introduced its evidence. The defendant Lambert demurred to the plaintiff's evidence, in so far as the plaintiff sought to foreclose its mortgage upon the tract of land claimed by defendant Lambert under the resale tax deed and the deed from the chairman of the board of county commissioners, which demurrer was sustained. Otherwise, the judgment was as prayed for by plaintiff.

The questions urged in this appeal are as follows:

First, that the court committed error in placing the burden of proof upon the plaintiff upon the issues joined by the answer of defendant Lambert and plaintiff's reply.

Second, that the deed upon which Lambert relied is void for the reasons: (a) That the testimony does not show that the land in question was bid off in the name of the county, but does show that it was sold at resale to "E. A. Felker, Chairman Board County Commissioners;" (b) that no copy of the notice of resale held in April, 1930, with an affidavit of its publication, was on file in the office of the county treasurer until the day of trial, which was March 4, 1932; (c) that no return of the resale of the land, held on April 21, 1930, with a copy of the notice thereof and affidavit of publication, and showing a complete minute of the sale, was ever filed in the office of the county clerk of McCurtain county; and (d) that the notice by publication given by the county treasurer of the proposed sale of the land to the defendant Lambert was not in substantial compliance with the statute governing the sale of land acquired by a county at a tax resale.

Under the first proposition, it is contended that the trial court erred in requiring the plaintiff to assume the burden of proof upon the question of the validity of the title by tax proceedings which was claimed by defendant Lambert. We are of opinion that the action of the court was correct. It is true that the title of defendant Lambert arose by virtue of a deed executed to him by the chairman of the board of county commissioners. However, said defendant had alleged that "on or about the 21st day of May, 1930, Bill Montgomery, county treasurer of McCurtain county, Okla., on behalf of the state of Oklahoma, conveyed the N. ½ of N. E. ¼ of section 27, township 6 south, range 26 east, same being a part of the lands described in plaintiff's petition, to McCurtain county, Okla." While technically the allegations in the answer, as just quoted, may not be sufficient to constitute "allegations of the execution of a written instrument," so that the same would be taken as admitted unless denied under oath, we think it is clear that there never was any intention of plaintiff to deny the execution of the resale tax deed to McCurtain county, and that the resale tax deed was

the deed mentioned by defendant Lambert as having been executed on May 21, 1930, and which was alleged to have **conveyed** the land to McCurtain county. That the plaintiff intended to admit the execution of the resale tax deed but claim its invalidity, is apparent from a consideration of the allegations of plaintiff's reply. The plaintiff in its reply set forth many grounds of attack upon the resale tax deed and the proceedings prior to the execution of the same, and expressly alleged that the county treasurer "did not execute a deed to said property to the chairman of the board of county commissioners of said county until long after the time of said pretended resale and not within the time provided by law for the making of said deed." The reply of plaintiff clarified the allegations of the answer of defendant Lambert wherein he alleged that the county treasurer "conveyed" the land to the county. It being admitted that the resale deed was executed, and the attack thereon resting upon alleged irregularities in the procedure prior to its execution rather than upon any apparent defects upon the face of the deed, we hold that said resale deed was and is presumptively valid, and that the plaintiff had the burden of establishing any facts which would show the invalidity thereof. In Akard v. Miller, 169 Okla. 584, 37 P. (2d) 961, in speaking of an attack upon a resale tax deed, this court said:

"If the proceedings concerning the resale were not as the law provides, it was incumbent upon the defendant to show these facts, and since he has not done so, we will not presume that irregularities existed."

By virtue of the provisions of the presumptive evidence statute (section 12760, O. S. 1931), the burden of proof was upon the plaintiff to sustain the attack upon the resale tax deed. Hatchett v. Going, 121 Okla. 25, 246 P. 1100; Cheney v. Cox, 125 Okla. 108, 256 P. 775.

We now consider the grounds of attack upon the resale tax deed. In the first place, it is contended that the testimony does not show that the land was bid off in the name of the county, but does show that the land was sold at resale to "E. A. Felker, Chairman Board County Commissioners." Section 12755, O. S. 1931, provides that in certain circumstances the county treasurer at a resale shall bid off the land "in the name of the county", and shall issue a deed "in the name of the chairman of the board of county commissioners." The resale tax record in the county treasurer's office, under the column headed "To Whom Sold," showed the land was sold to E. A. Felker, chairman of the board of county commissioners. The treasurer testified that he called off the several tracts of land separately as they were listed on the delinquent tax sale list, and that "if there wasn't any bid it was cried out three times and then struck off to the county," and that in order to indicate on the records that particular tracts had been sold to the county, the treasurer wrote the name of the chairman of the board of county commissioners. The resale tax deed conveying the particular tract in controversy designated E. A. Felker as chairman of the board of county commissioners, as grantee. The statute requires the return of such resale to show to whom each particular tract of land has been sold. We concur with counsel for plaintiff that the public records are required to be kept in order that the public may know what land has been sold and to whom sold, but we cannot agree with counsel that the county treasurer, after bidding off the land "to the county," as he says, rendered the resale invalid simply because he wrote the name of the chairman of the board of county commissioners under the heading, "To Whom Sold." The law itself provides that after the land has been bid off in the name of the county, the deed shall be made to the chairman of the board of county commissioners. We are of opinion that the purpose of the statute has been met when the resale tax record shows by unmistakable terms that the county was the purchaser, and that the record is sufficient whether the treasurer enters in the "To Whom Sold" column the name of McCurtain county or the name of the chairman of the board of county commissioners, followed by his official title. The statute recognizes that a deed made to the chairman of the board is a compliance with the law requiring the treasurer to execute a deed to the purchaser at such resale, where the land has been bid off in the name of the county. We therefore hold there has been a sufficient compliance with the statute by the treasurer in noting on his record the purchaser of the land as E. A. Felker, chairman of the board of county commissioners.

It is next contended that no copy of the notice of resale held in April, 1930, with an affidavit of its publication, was on file in the office of the county treasurer until the day of trial of this case. Upon reading the testimony of the treasurer, we are of opinion that the same fairly shows a com-

pliance with section 12756, O. S. 1931. That section requires the treasurer within 30 days to file a return of the resale, a part of which shall be the notice of such resale with an affidavit of its publication or posting. Upon the question whether this statute was complied with, the treasurer ·who was in office in April, 1930, when the sale was conducted, testified that he had in his office a proof of publication of the sale notice of the resale held in McCurtain county in April, 1930, and that the same became a part of his records on the day of trial, and further said that he "had one but it is gone; the one that is on file in the office of the county clerk and it is in there." He testified that the first time· he made a search for the same was the morning of the trial, and expressly stated that "at the time I made my return I had one, but I could not find it this morning." Then, failing to find the copy in his office. he went to the publisher of the McCurtain Gazette and procured the publisher's affidavit of the publication of the notice of resale and attached it to a copy of the publication. The plaintiff introduced the treasurer's return of resale, wherein the treasurer certified that notice of the resale was published in the McCurtain Gazette, and that a copy of the notice with the affidavit of the publication was attached, but on the day of trial it was discovered that that affidavit was not to be found in the treasurer's office, and the treasurer thereupon secured another affidavit from the publisher and attached it to a copy of the publication, and this return of resale was introduced in evidence as exhibit 4. Concerning this, the witness on cross-examination testified:

"Q. Now, this instrument marked plaintiff's exhibit 4 under—you had the original of that in your office? A. Yes, sir. Q. And it was filed there? A. Yes, sir. Q. And you discovered this morning—. A. The original was filed in the county clerk's office, but I had a copy of it. Q. The original was filed in the county clerk's office? A. Yes, sir. Q. Now, you discovered this morning that you could not find it? A. Yes, sir. Q. And this is a copy? A. Yes, sir. Q. Exact copy? A. Yes, except the day. Q. There is no difference then in this and the one you spoke of other than the date? A. That's the only difference."

We are of opinion that the testimony sufficiently shows a compliance with the statute as to filing the return of resale, and that the original was filed with the county clerk, of which a copy was retained by the treasurer, but that on the morning of the trial he could not locate a complete record.

We have set forth the testimony upon the question raised for the purpose of showing that there was a compliance with the statute as to the filing of the return of resale. However, it is now settled that the regularity of a resale may be proved by records other than a copy of the return of resale required to be retained in the county treasurer's office, and that the failure to show the regularity of ·the resale by the county treasurer's records is not fatal to the validity of the resale tax deed. Jepeway et al. v. Barrett, 165 Okla. 220, 26 (2d) 661.

It is further contended that no return of the resale held in April, 1930, with a copy of the notice of such resale and the affidavit of publication, etc., was ever filed in the office of the county clerk of McCurtain county. In undertaking to prove that no return of such resale was filed with the county clerk, the plaintiff produced the county clerk who took office in January, 1931, after the resale in April, 1930. The witness testified that he had searched. his office and failed to find any such return; that "we did search until we found out what became of it;" that the search was made during the year 1931; that he did not think· he ever saw the return of resale in his office "but I think I did see it in the McCurtain Democrat office;" that he does not know whether the return was ever filed in the office of the county clerk; but that he did see it and that sometime after he took office in January, 1931, he was requested to go down to the printer's and get the return of resale, and that "when I went down to get the return Mr. Schooler had not bound the return and indicated that he would have to wait until he got a shipment of something from Hugo or Paris, Texas." The evidence further indicates that probably the return of resale was burned. Whether it was first filed with the county clerk and by him taken to the printer for binding is questionable, so far as the testimony of the county clerk shows. However, there is positive testimony by the county treasurer that the original return of resale was filed in the county clerk's office. We have a case, then, where the law was complied with by the county treasurer, but at the time of trial the county clerk's records did not disclose such compliance. It is our opinion that when the law has once been complied with by the filing of the return ·of resale, the fact that the same may later be misplaced, lost or withdrawn, does not affect the validity of the resale. If a resale tax deed conveys title as of the date of the performance of the last act required by law, it is our opinion that that title remains

valid, even though the official records showing compliance with the law may not be available at all times to prove that the public officers followed the law in the tax proceedings. Davis v. Harrington, 35 Kan. 196, 10 P. 532; Hoffman v. Pack et al. (Mich.) 81 N. W. 934; Cowles v. Adams et al. (Neb.) 110 N. W. 697; Herr v. Graden (Colo.) 81 P. 242.

Finally, it is contended that there were fatal defects in the form of the notice by publication of the proposed sale by the county commissioners to defendant Lambert, and that the notice was not published a sufficient length of time to meet the terms of the statute. We find it unnecessary to consider the propositions urged. As already shown, it is our opinion that the resale tax deed to McCurtain county vested the title in the county, and that that deed divested plaintiff's mortgagors of all their right in the land. Whether the deed to defendant Lambert conveyed the title is not a question in which the plaintiff is interested; whether the county or defendant Lambert owns the land cannot affect the rights of plaintiff, because in any event the plaintiff is not entitled to establish any mortgage lien upon the land covered by the resale tax deed. Plaintiff was affected by the adjudication that the resale tax deed was valid, but when the trial court found the tax deed to be valid and this court reaches the same conclusion, it is clear that plaintiff can neither gain nor lose any rights by the determination of the validity or invalidity of the deed executed to defendant Lambert by the chairman of the board of county commissioners. Therefore, plaintiff cannot complain of the judgment sustaining the validity of Lambert's deed. Baker v. Vadder, 83 Okla. 140, 200 P. 994; Tinch et al. v. State ex rel. Shull, Bank Com'r, 148 Okla. 46, 297 P. 251.

It is contended that the court erred in sustaining the demurrer to plaintiff's evidence. We concur with counsel for plaintiff in the contention that where competent evidence is introduced by plaintiff which is sufficient to make a prima facie case, it is reversible error to sustain a demurrer thereto. but in this case the trial court was not required to weigh conflicting evidence; the duty of the court, at the conclusion of plaintiff's evidence, was to determine whether, upon the admitted facts shown by plaintiff, the plaintiff had made a prima facie case showing the invalidity of the resale tax deed. Upon that question, as already shown, we are of opinion that the evidence showed the validity rather than the invalid-

ity of that deed. Where there is no competent evidence sufficient to support a right of recovery in plaintiff, it is the duty of the court to sustain a demurrer to the evidence. First State Bank v. Lucas, 168 Okla. 406, 33 P. (2d) 622.

The judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys C. J. Davenport, J. E. Thrift, and Kenneth H. Lott in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Davenport and approved by Mr. Thrift and Mr. Lott, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and BUSBY, PHELPS, CORN, and GIBSON, JJ., concur.