A. H. SASSE, *Appellant,* v. KING COUNTY *et al.,*
*Respondents.*[1]

[1]Reported in 82 P. (2d) 536.

*Henry W. Parrott,* for appellant.

*B. Gray Warner, Lloyd W. Shorett, Ray M. Wardall,* and *Jerry Finch,* for respondents.

STEINERT, C. J.—Plaintiff, appearing in a dual capacity, brought this action seeking (1) to establish a right of redemption of real property from a sale wherein King county was the purchaser under tax foreclosure proceedings; and (2) to set aside a resale of the property subsequently made by the county to its corespondents. Trial by the court without a jury resulted in a decree denying plaintiff relief and quieting title to the property in the purchaser at resale, free from any claim of either the plaintiff or the county. Thereupon plaintiff appealed.

The property involved in this action consists of a quarter section of green timber land located in a steep, hilly area near the middle fork of the Snoqualmie river, in King county. According to the records of the assessor's office, the county cruise shows that the timber consists of six million, four hundred eighty thousand feet of fir, cedar, hemlock, and larch, and that, over a period of many years prior to 1932, the land had an assessed valuation of $4,310, with a resulting annual tax of from $250 to $300. A road suitable for logging purposes is under construction and will be extended to a point about a half mile south of the southerly line of the land.

Appellant acquired the property in 1928, in trade for his equity in a Seattle apartment house. The conveyance to him was subject to general taxes for 1927, amounting to $190.51, and delinquent taxes from 1922 to 1926, inclusive, amounting to $793.23, and to delin-

quent assessments for forest fire protection over the same period, amounting to $42.40.

After receiving his deed, appellant paid the current taxes for several years, his last payment being made in 1931; but he has never paid any of the delinquent taxes. It also appears that appellant had not at any time, either preceding or during the trial, ever seen this land.

In 1932, the county instituted proceedings under the statute to foreclose its tax lien, and pursuant thereto the property was sold at public auction on April 30th of that year. For lack of other bidders, the county became the purchaser and received the usual form of deed. The county then held the property until the summer of 1936, when, by order of the county commissioners dated June 8th, the county treasurer was directed to sell the property upon bids in amount not less than $160. On July 11, 1936, the property was sold by the county treasurer to respondent Thuesen for that amount, upon terms of forty dollars to be paid at the time of sale and the balance to be paid within thirty days. A deed was issued to Thuesen on July 21, 1936.

In the meantime, that is, on June 26, 1936, appellant, for some reason or other, decided to pay up the delinquent taxes, but he was unaware at that time of the tax foreclosure and the proceedings subsequent thereto. After an unsuccessful attempt to redeem the land, he began this action in May, 1937, which resulted, as already stated, in a decree adverse to him. Further details concerning appellant's attempted redemption will appear later herein.

The assignments of error may be discussed under two general heads.

Appellant contends, first, that, although the statutory period of redemption of the land had expired, nevertheless his right to redeem was established and became fixed both by his offer to pay up the delinquent

taxes in full, followed by the county's acceptance of such offer, and by the county's contemporaneous offer to allow him to redeem, which latter offer, he alleges, was fraudulently, deceitfully, and wrongfully withdrawn by the county.

The facts upon which this twofold contention is based are as follows:

On June 8, 1936, the county commissioners held a regular meeting, and in the minutes of that meeting appears an entry to the effect that, at that time, application to purchase the land was made by Thuesen, and that the treasurer was thereupon directed to advertise the property and to accept no bid less than $160. The fact is, however, that the application to purchase was not made until June 9th. The clerk of the board having charge of writing up the minutes testified that she had been directed to include the application made June 9th in the minutes of June 8th; she also testified that this was irregular, but that it was often done. The record does not disclose the identity of the person who directed her to do this.

On June 26, 1936, appellant and his attorney, without knowledge of the preceding events, called on the county treasurer to ascertain the amount of delinquent taxes on the land. It was appellant's intention to pay these taxes out of the proceeds of a loan which he was then negotiating on the property. At that time, however, there was an outstanding unpaid mortgage thereon of $3,612.29, which appellant himself had executed. The treasurer advised appellant of the tax foreclosure sale made to the county in 1932 and also told him that the county presently had a tax investment in the property amounting to about $1,900. The treasurer further stated that, so far as his office was concerned, he would be glad to allow appellant to redeem, but that

the matter was entirely in the hands, and under the full control, of the county commissioners.

Appellant then called at the office of the commissioners and told a clerk there of his desire to redeem and pay the sum of $1,900, the amount indicated by the treasurer. The clerk responded by saying that the commissioners "would be glad to allow the redemption and would accept" appellant's offer. The clerk then obtained from appellant a description of the property, but, after examining the records, advised appellant that the property had already been sold and that the offer would therefore have to be withdrawn. The fact is, as stated above, that the property had not yet then been sold. The reason why the clerk so reported to appellant is that, according to the practice and custom in the King county commissioners' office, properties acquired by the county through tax foreclosure are marked "sold," on the records of that office, as soon as an order of sale is entered by the commissioners; from that point, the treasurer has charge of the proceedings.

Upon the occasion of appellant's visits on June 26th, he made no actual tender and apparently he had not yet completed his negotiations for the funds out of which the redemption payment was to be made. No further request or demand was ever made by appellant upon the county commissioners.

On July 15, 1936, appellant and his attorney again called on the treasurer for the purpose of ascertaining the name of the purchaser at the resale, with a view of instituting proceedings to attack the original tax foreclosure because of a slight defect in the description of the property. They then learned from the treasurer that the property had been sold, not on June 8th, as they had been formerly advised by the clerk of the county commissioners, but on July 11th, at which time Thuesen had purchased it for $160. The signifi-

cance of this, presumptively, is that, if appellant had known on June 26th that the sale was to be made July 11th, he might have attended and bid on the property.

Considering all of these facts and considering, also, what is lacking in the record in point of fact, we are compelled to hold against appellant's first contention.

■ Rem. Rev. Stat., § 11280 [P. C. § 6882-119], gives a former owner of real property the right to redeem at any time before, but not after, the issuance of a tax deed, upon payment, in legal money, of the amount for which the property was sold, together with a prescribed rate of interest thereon.

Boards of county commissioners have only such powers as have been granted to them, expressly or by necessary implication, by the constitution and statutes of the state, and when the board goes beyond the scope of its authority its acts are void and not binding upon the county. *Martin v. Whitman County,* 1 Wash. 533, 20 Pac. 599; *State ex rel. Spring Water Co. v. Monroe,* 40 Wash. 545, 82 Pac. 888; *State ex rel. Potter v. King County,* 45 Wash. 519, 88 Pac. 935; *McElwain v. Abraham,* 58 Wash. 26, 107 Pac. 832; *Green v. Okanogan County,* 60 Wash. 309, 111 Pac. 226, 114 Pac. 457; *State ex rel. Wauconda Inv. Co. v. Superior Court,* 68 Wash. 660, 124 Pac. 127, Ann. Cas. 1913E, 1076; *Osborne, Tremper & Co. v. King County,* 76 Wash. 277, 136 Pac. 138; *Johns v. Wadsworth,* 80 Wash. 352, 141 Pac. 892; *Northwestern Imp. Co. v. McNeil,* 100 Wash. 22, 170 Pac. 338. By the test of this rule, the board had no power to allow a redemption not permitted by statute, and any agreement to that effect would have been *ultra vires* and not legally binding upon the county.

■ Assuming, however, that, under certain conditions and by reason of peculiar facts, the county commissioners could permit a redemption after the statutory period had expired, and that an agreement to do

so would be enforceable in a court of equity, as some authorities seem to hold, this case does not present such a situation nor does it call for such disposition. The treasurer made no offer to permit redemption, but expressly disclaimed any authority in that connection. The offer by appellant to the county commissioners was not accompanied by any tender, nor was appellant in a position to make a legal tender at that time. The clerk in the commissioners' office certainly made no offer to permit redemption of the specific property in suit; and, even if he did make such offer, it was withdrawn almost as soon as made because of the memorandum of sale appearing on the commissioners' record. The transactions between appellant and the county officials amounted to nothing more than an expression of desire on the part of appellant to redeem the property and expressions of a general willingness on the part of the officials to permit redemption of any property which the county held for taxes; but there was no formal or binding agreement between them.

So far as any fraud or deceit on the part of respondents is concerned, the record is totally bare of any proof thereof. The only support for the charge is a possible inference that might be drawn from the facts already stated. But to establish fraud, something more than suspicion is required; it must be proved by evidence that is clear, cogent and convincing. This principle is well established by frequent decisions of this court. Our latest expression thereof is in *Choukas v. Carras*, 195 Wash. 659, 81 P. (2d) 841.

In passing, we may say that the practice of marking properties as sold when they have only been *ordered* sold does not seem to us to be an advisable thing to do, and certainly the practice of incorporating into the minutes of a meeting of the commissioners something that occurred subsequently is not to be commended at all; for if anything should speak the truth a

public record should. But so far as the record in this case discloses, those matters were mere irregularities or errors, which in no way prejudiced any legal right of appellant. The records were subject to his examination, and a misstatement by the clerk would in no event be actionable, in the absence of fraud or an intentional misleading. Furthermore, the statutory law on the subject of resales by the county, found in Rem. Rev. Stat., §§ 11293-4-5 and 11323 [P. C. §§ 6882-132-133-134, 7036], does not make such transactions dependent upon prior applications to purchase, but leaves such matters to the judgment and discretion of the county commissioners.

█ █ Appellant's second contention, advanced as an alternative, is that, as a general taxpayer, he has the right to maintain this action and thereby attack the legality of the resale by the county to Thuesen.

When a county purchases land at a general tax foreclosure sale, for want of other purchasers, the county takes and holds the land, not in its proprietary capacity, but in trust for the state and the various taxing municipalities within which the land lies. *Gustaveson v. Dwyer,* 78 Wash. 336, 139 Pac. 194; *Shelton v. Klickitat County,* 152 Wash. 193, 277 Pac. 839.

A resale of the land by the county is but a part of the statutory tax collecting process, which is not complete until such resale is finally made by the county, to the end that the proceeds thereof shall be justly apportioned to the various funds entitled thereto. *Shelton v. Klickitat County,* 152 Wash. 193, 277 Pac. 839. See also *Tacoma v. Fletcher Realty Co.,* 150 Wash. 33, 272 Pac. 43, and *Wilson v. Salt Lake County Corp.,* 57 Utah 274, 194 Pac. 125.

In so far as the state is affected by the loss alleged to result from the action of the county officials, appellant, appearing in the capacity of a citizen and taxpayer, cannot maintain an action either to prevent or to re-

cover the loss. The institution of suits involving the disposition of the revenue of the state where no private interests are involved is relegated to the judgment and discretion of the attorney general. *Jones v. Reed,* 3 Wash. 57, 27 Pac. 1067; *State v. Gattavara,* 182 Wash. 825, 47 P. (2d) 18.

If the appellant, as a general taxpayer, has any right of action whatever in the premises, such right must, of necessity, be limited to the loss or damage sustained by the county and the other taxing municipalities within which the land lies.

As authority for his right to maintain this action, appellant cites the case of *Barnett v. Lincoln,* 162 Wash. 613, 299 Pac. 392. To this case may be added the following: *Miller v. Sullivan,* 32 Wash. 115, 72 Pac. 1022; *Dirks v. Collins,* 37 Wash. 620, 79 Pac. 1112; *Maxwell v. Smith,* 87 Wash. 629, 152 Pac. 530; *Shanstrom v. Case,* 103 Wash. 672, 175 Pac. 323.

Those cases, however, were actions for injunctions to *prevent* the doing of illegal acts involving the expenditure of public moneys. The authorities are agreed that, in such cases, a resident taxpayer has the right to invoke the interposition of a court of equity to prevent the consummation of a wrong which would result in an illegal disposition of the moneys of a municipal corporation. See 4 Dillon on Municipal Corporations (5th ed.), §§ 1579 to 1587, inclusive. The reasons for sustaining such right of action are obvious.

But this case is not of that nature. This is an action to set aside a sale that has been consummated and in which no fraud has been established.

To set aside a tax sale, the complainant must show that he has some title to the land or some interest in it. Without some interest in the land, he has no right to have a judicial inquiry into the title which another takes under a tax sale. *Embury v. Goodenough,* 157

Mich. 140, 121 N. W. 744; *Despard v. Pearcy,* 65 W. Va. 140, 63 S. E. 871; *Darnell v. Flynn,* 69 W. Va. 146, 71 S. E. 16; *Jordan v. Beale,* 172 Cal. 226, 155 Pac. 990; *Quaker Realty Co. v. Labasse,* 131 La. 996, 60 So. 661, Ann. Cas. 1914A, 1073; *Colebrook Guaranty Sav. Bank v. Lambert,* 172 Okla. 80, 44 P. (2d) 117; *Deseret Irrigation Co. v. Bishop,* 92 Utah 220, 67 P. (2d) 210; *Smith v. Whitney,* 105 Mont. 523, 74 P. (2d) 450; Blackwell on Tax Titles (5th ed.), § 1065.

The reason for the rule as so declared is that one who has no interest in the subject matter is not the "real party in interest."

Another reason for not allowing such actions rests in public policy. If tax titles were allowed to be upset in this way, then every purchaser at resale would be subject to the hazard of later suits by persons having no direct interest in the property. As a consequence, there would be no safety in existing tax titles, nor would there be any incentive in the future to bid at such sales. The county would thus be hampered in collecting delinquent taxes, and properties sold under tax foreclosure would remain off the tax rolls indefinitely. We conclude and hold that appellant, as a general taxpayer, has no right to maintain this action.

Whether a resale of land by the county after tax foreclosure may be set aside in an action brought by a general taxpayer upon the ground of fraud of the parties to the resale, is not now before us, and upon that question we express no opinion. In the case presented here, fraud was not established, and hence the vital element of that proposition is lacking.

Other questions are suggested in appellant's brief. These, however, are rendered immaterial by our disposition of the questions previously discussed.

The decree is affirmed.

MILLARD, BEALS, BLAKE, and ROBINSON, JJ., concur.