[No. 27439. *En Banc.* October 26, 1939.]

THE LONGVIEW COMPANY, *Appellant,* v. COWLITZ COUNTY *et al., Respondents and Cross-appellants.*[1]

[1]Reported in 95 P. (2d) 376.

*Donworth, Paul & Donworth* and *Joseph T. Woods* (*Lombardi, Robertson, Fligg & McLean,* of counsel), for appellant.

*Shirley R. Marsh* and *H. Jerard Imus,* for respondents and cross-appellants.

JEFFERS, J.—This action was instituted by The Longview Company, a corporation, against Cowlitz county, James A. Fogarty, W. J. Martin, and Thomas G. Jordan, as county commissioners thereof, and H. D. Renner, as county treasurer, for the purpose of obtaining a declaratory judgment declaring the rights of plaintiff and defendants, first, with respect to surplus money now in the hands of defendant Renner, as county treasurer, or which has been transferred to county funds, arising, or which will arise, from the resale by defendants of property acquired by the county from the plaintiff, or its predecessor in interest, through foreclosure of general taxes, subject to diking district assessments; and second, with respect to rights and status of plaintiff with respect to the attempt of defendants to deduct from the proceeds of such re-

sales interest at the rate of ten per cent per annum for the period the county holds title thereto.

A demurrer to the complaint was interposed by the defendants, on the ground that the complaint did not state a cause of action. We do not find in the record anything to indicate that a formal order was ever entered on this demurrer. This, however, is immaterial, in view of the fact that the matter was subsequently heard on facts stipulated to be as alleged in the complaint, which facts were carried into the finding subsequently entered by the court.

Findings of fact, conclusions of law, and judgment were made and entered December 10, 1938. Plaintiff predicates error on the court's dimissal of its first cause of action, and it has appealed from such judgment. Defendants have cross-appealed, and contend that the court erred in granting judgment in favor of plaintiff on its second cause of action. Plaintiff will hereinafter be referred to as appellant, and defendants as cross-appellants.

The question which is presented is whether or not the findings of fact support the conclusions of law and judgment as entered.

The court made the following findings of fact relative to appellant's first cause of action: That, prior to October 27, 1936, appellant was the owner of certain real estate in Cowlitz county, Washington, subject to diking improvement assessments, one of the parcels of real estate being lot 8, block 30, Highlands Addition to the city of Longview, No. 3; that, on October 27, 1936, cross-appellant H. D. Renner, as county treasurer, offered this lot for sale, on account of the nonpayment of real property taxes; that, at such sale, cross-appellant Cowlitz county became the purchaser of the property, there being no other bidders; that cross-appellants county commissioners, pursuant to

Rem. Rev. Stat., § 4439-4 [P. C. § 1945-86c], caused publication of notice of sale of lot 8, and upon the day fixed in the notice, the lot was sold for four hundred dollars, and a deed issued to the purchaser; that the amount of the lien for general taxes for which the property was sold was $9.38, additional interest to the date of tax resale, twenty-one cents; that, at the time of the resale, there was outstanding against the lot a lien of consolidated diking improvement district No. 1 for the following amounts: Bond (representing installments for construction due at the time of resale) plus interest, $44.34, and maintenance assessment (past due), four dollars; that, at the time of resale, there was outstanding against the lot, liens for certain local improvement districts in the sum of $110.11; that cross-appellant Renner has caused, or will cause, the sum of four hundred dollars to be apportioned and distributed as follows: To cross-appellant county (on taxes), $238.40, and on current expense fund, $3.15, to consolidated diking improvement district No. 1 (bond), $44.34, and maintenance, four dollars, to local improvement districts, $110.11.

The findings further state that, at the time of the original tax foreclosure sale, there were no liens or charges against lot 8, other than as set out herein; that, on August 6, 1938, appellant made a formal demand upon cross-appellant Renner for payment of surplus proceeds from the resale, over and above the amount necessary to pay the taxes due at the date of resale, past due diking improvement district assessments, and local improvement district assessments; that cross-appellants refused, on August 9, 1938, and now refuse, to comply with appellant's demand, and are now withholding the sum of $232.17, which appellant claims is now due and owing to it on account of such resale; that cross-appellants have threatened, and are

threatening, and unless restrained by the court will proceed, to resell other property and distribute the surplus proceeds of such sales in the manner adopted by cross-appellants in the sale of lot 8; that the questions with respect to the application of the proceeds of resales are of great public importance and require a declaration of rights of all parties in interest, as provided by Rem. Rev. Stat. (Sup.), § 784-1 [P. C. § 8108-21] *et seq.* (Laws of 1935, p. 305, as amended by Laws of 1937, p. 39.)

In regard to appellant's second cause of action, the findings of fact incorporate, as a part thereof, the general allegation contained in the first cause of action, and the court then finds that, with respect to the resale of lot 8, cross-appellants have deducted from the proceeds of the resale interest at the rate of ten per cent per annum on the amount for which the lot was struck off to the county, from the date of the tax foreclosure sale to the date of resale, and have threatened to, and will unless restrained, appropriate from the proceeds of future resales, interest in like amount; that appellant desires to have determined the right of cross-appellants to appropriate from the proceeds of resales, interest on the amount for which the property was struck off to cross-appellant, and to obtain a declaration of appellant's rights and status with respect thereto.

Based upon the foregoing findings of fact, the court concluded that appellant was entitled to a judgment declaring that, under the law, and particularly that provision of Rem. Rev. Stat., § 4439-4, which states that such property "shall be offered for the amount of the general taxes for which the same was struck off to the county . . . ," interest at ten per cent per annum, or in any amount, does not run on the amount for which real estate is struck off to the county

at a tax foreclosure sale, from the date of such sale to the date of resale by the county, and in the resale of such land, a county, or its officers, and particularly the cross-appellants herein, should not include such interest as an item to which the proceeds of such resale should be apportioned, or which should be added to the amount for which such property is offered for sale by the county, under the provisions of § 4439-4; that appellant should take nothing under its first cause of action; and that the cause of action should be dismissed. Judgment was entered in accordance with the conclusions.

Rem. Rev. Stat., § 4439-4, provides in part as follows:

"Property subject to a drainage or diking or sewerage improvement district assessment, acquired by a county pursuant to a foreclosure and sale for general taxes, when offered for sale by the county, shall be offered for the *amount of the general taxes* for which the same was struck off to the county, together with all drainage or diking or sewerage improvement district assessments or installments thereof, due at the time of such resale, including maintenance assessments, and supplemental assessments levied pursuant to the provisions of section 4439-6, coming due while the property was held in the name of the county; and the property shall be sold subject to the lien of all drainage or diking or sewerage improvement district assessments or installments thereof not yet due at the time of such sale, and the notice of sale and deed shall so state. *Provided,* that the county board may in its discretion, sell said property at a lesser sum than the amount for which the property is offered in the notice of sale. The proceeds of such sale shall be applied first to discharge in full the lien or liens for general taxes for which said property was sold, and the remainder, or such portion thereof as may be necessary, shall be applied toward the discharge of all drainage or diking or sewerage improvement district assessment liens upon such property, and the surplus, if any,

shall be applied toward the payment of any delinquent or due local assessments or local assessment installments outstanding against the property levied by any authority other than that of the county, taking them in the order of their maturities, beginning with the earliest; *after which if any money remains the treasurer shall hold the same for the person whose interest in the property entitles him thereto.*" (Italics ours.)

This section of the statute provides for the resale of property acquired by general tax foreclosure proceedings, and was enacted as a portion of § 11, chapter 46, Laws of 1923, p. 126. This section amended Rem. Comp. Stat., § 4439, which was § 33, chapter 130, Laws of 1917, p. 544. A portion of the section last referred to, amended by § 4439-4, *supra,* reads as follows:

"In any case where any property shall be struck off to or bid in by the county at any sale for general taxes, and such property shall subsequently be sold by the county, the proceeds of such sale shall first be applied to discharge in full the lien or liens for general taxes for which the same was sold, and the remainder, or such portion thereof as may be necessary, shall be paid to the district to discharge all drainage or diking improvement district assessment liens upon such property, *and the surplus, if any, shall be distributed among the proper county funds.*" (Italics ours.)

The difference between the sections with which we are concerned, indicated by the italicized portions thereof, is that, under the law of 1917, the surplus remaining after the application of the purchase price of the property to payment of taxes, etc., "shall be distributed among the proper county funds," while the statute now in force, enacted in 1923 (§ 4439-4), provides that, after application of the proceeds of the property to payment of taxes, etc., "if any money remains, the treasurer shall hold the same for the person whose interest in the property entitles him thereto."

Appellant contends that the word "person," as used in that part of Rem. Rev. Stat., § 4439-4, which states "after which if any money remains, the treasurer shall hold the same for the person whose interest in the property entitles him thereto," should be construed to mean the owner of the property at the time of the tax foreclosure.

While it may be doubtful whether or not appellant, in this case, would be entitled to participate in any surplus in the hands of the treasurer, in any event, the property having been sold under the declaratory part of § 4439-4, *supra*, for more than was called for in the notice of sale, and not for a lesser sum, as authorized in the proviso (*Baldwin v. Frisbie*, 149 Wash. 294, 270 Pac. 1025), but assuming that the provision in question does apply to sales, whether made for more than called for in the notice of sale, or, under the proviso, for less, and that appellant's interest herein is such as to entitle it to a determination in its favor, if appellant's contention is sustained, still we are unable to agree with appellant that the word "person," as used in the statute in question, could reasonably be construed to mean the owner of the property at the time of the tax foreclosure.

Appellant lays considerable stress upon the fact that in 1923 the legislature changed the wording of the statute relative to the disbursement of any surplus in the hands of the county treasurer, and appellant contends that because thereof it must be assumed it was the intention of the legislature to change the law. We can agree with appellant's contention as a general proposition, and, applying the principle to the instant case, the question which then presents itself is: To whom did the legislature intend the surplus to go? Appellant further contends that, from the wording of the proviso in question, it is plain the legislature in-

tended this surplus to go to a person, which it is contended would include a corporation such as appellant, and not to any municipality or taxing district.

Certainly, it is the duty of the court to endeavor to ascertain, if possible, the intent of the legislature in construing a statute, but we are at a loss to understand how it would be possible to place upon this provision the construction contended for by appellant, in view of the fact that we have consistently held, at least since the decision in the case of *Gustaveson v. Dwyer,* 78 Wash. 336, 139 Pac. 194, decided in 1914, that a tax foreclosure proceeding deprives the record and possessory owner of all interest in the property; and that, when the county becomes the purchaser of land at a general tax foreclosure sale for want of other bidders, the county, upon the deed being issued to it pursuant to such sale, acquires title to such property in fee, as against the owner. However, the title thereby acquired becomes vested in the county, not in its proprietary capacity, but in trust for the state and for the other taxing municipalities within which the land is situated, with power and obligation on the part of the county to sell the land and fairly apportion the proceeds to the state, municipal, and other funds entitled thereto. *Gustaveson v. Dwyer, supra; Shelton v. Klickitat County,* 152 Wash. 193, 277 Pac. 839; *Sasse v. King County,* 196 Wash. 242, 82 P. (2d) 536.

Had the legislature intended that the former owner should have this surplus, it certainly would have been a simple matter to have so stated.

We appreciate that the provision in question is not clear; in fact, we doubt if language could have been used which would have been more difficult to construe, when considered in connection with the situation that is presented in any case where there is a surplus under the statute to be distributed. In view of the situation

presented, we think, in order to give some practicable and workable effect to the statute, it is not unreasonable to construe the word "person," as used herein, to mean the county and the various taxing funds, as contended for by cross-appellants.

To place upon the word "person" the construction contended for by cross-appellants, would not, in our opinion, be a strained or unnatural construction; in fact, unless it is so construed, we are of the opinion this provision would have no meaning. The word "person" is a generic term of comprehensive nature, embracing natural and artificial persons, such as corporations. *State ex rel. Northwestern Colonization & Imp. Co. v. Huller*, 23 N. M. 306, 168 Pac. 528, 1 A. L. R. 170. We have in our own statutes an expression indicating the broad scope given to the word "person." Rem. Rev. Stat., § 11110 [P. C. § 6882-6], provides in part: "The term 'person,' wherever used in this act, shall be construed to include firm, company, association or corporation."

The word "person" has been held to include the state. *West Coast Mfg. & Inv. Co. v. West Coast Imp. Co.*, 25 Wash. 627, 66 Pac. 97, 62 L. R. A. 763. See, also, *State v. Odd Fellows Hall Ass'n*, 123 Neb. 440, 243 N. W. 616. In *Hulbert Special School Dist. v. Cooper*, 180 Ark. 29, 20 S. W. (2d) 322, it was held that school and drainage districts were persons, within the meaning of the statute. See, also, *Spear v. Bremerton*, 90 Wash. 507, 156 Pac. 825. In *Lancaster County v. Trimble*, 34 Neb. 752, 52 N. W. 711, it was decided that a county was a person, in the legal sense of the term. ·

Appellant cites the cases of *Welch v. Haley*, 224 Mass. 261, 112 N. E. 860, and *Chadwick v. Cambridge*, 230 Mass. 580, 119 N. E. 958. We doubt the applicability of the cited cases, because of the difference between the Massachusetts statutes relative to the col-

lection of taxes and our statutes; but, in any event, we do not think the cited cases can be considered as authority herein, in view of the decisions of this court to the effect that, after foreclosure, the former owner has no interest in the property.

We think the trial court was right in refusing to construe § 4439-4 as contended for by appellant, and in denying appellant any relief on its first cause of action.

In regard to the second cause of action, cross-appellants contend the county should be allowed to appropriate from such surplus in the hands of the treasurer interest at the rate of ten per cent from the time the property was struck off to the county until the date such property was resold. We are of the opinion the trial court was right in holding that interest could not be charged and deducted by the county from such surplus during the period above mentioned. The county would have no right to charge interest during this period or make any deduction therefor, unless authorized by statute.

Rem. Rev. Stat., § 11292 [P. C. § 6882-131], provides:

"All property deeded to the county under the provisions of this act shall be stricken from the tax-rolls as county property and exempt from taxation and shall not be again assessed or taxed while the property of the county."

Under § 4439-4, *supra*, when property held by the county is offered for sale, it shall be offered for the amount of the general taxes for which the same was struck off to the county, together with other assessments, as set out in the section.

The statutes making no provision therefor, we are clearly of the opinion the county would have no right to deduct from the proceeds of any resale held pursuant to § 4439-4, *supra*, interest on the amount for

which the property was struck off to the county at the tax foreclosure sale, from the date of such sale to the date of a resale.

The judgment is affirmed.

BLAKE, C. J., MAIN, MILLARD, and GERAGHTY, JJ., concur.

BEALS, J. (dissenting)—As stated in the majority opinion, the question to be determined is whether or not the findings of fact support the conclusions of law and the judgment as entered by the trial court.

The applicable sections of the statute are set forth in the majority opinion. The first portion of Rem. Rev. Stat., § 4439-4, down to the proviso, covers the matter of offers for sale by the county of property subject to the various improvement district assessments referred to in the section, relating, of course, to property which has been acquired by the county pursuant to foreclosure and sale for general taxes. The proviso vests in the county board a discretion to sell the property for a sum less than the amount at which the same is offered in the notice of sale. The remainder of the section, which covers the matter of the disbursement of the proceeds of the sale, while following the proviso, not being separated therefrom as a new paragraph, is in fact, it seems to me, a part of the declaratory part of the section. The words "the proceeds of such sale," with which this latter portion of the section commences, refer to the proceeds of any sale under the section, and not merely to the proceeds of the sale authorized by the county board for a sum less than that at which the property was offered in the notice of sale.

In the case of *Baldwin v. Frisbie*, 149 Wash. 294, 270 Pac. 1025, is found some language (p. 298) which might be construed as indicating that this court was

of the opinion that the last half of the section was included within the proviso. That particular question was not before the court for decision, as the court held that it did not appear from the record that the property had been sold under the proviso rather than under the declaratory portion of the section.

In my opinion, it should be held that the latter portion of the section, commencing "the proceeds of such sale," is not a portion of the proviso, but refers to sales made under the first portion of the section. This construction of the section is reasonable; as, if the property be sold for a lesser sum than the amount of the general taxes and the assessments enumerated in the first portion of the section, it is difficult to understand how there could be any surplus, after allocating the money received to the payments enumerated in the section.

Section 4439-4, *supra,* is a portion of a special statute providing for the sale, under tax foreclosure, of lands against which are unpaid improvement district assessments levied for certain specified benefits. While as to other tax sales, the legislature has provided a different method of allocation of the proceeds of such sales, the statute now under discussion is complete in itself, and should be enforced according to its terms. In this connection, the legislative intent, as expressed in the amendatory act, § 11, chapter 46, Laws of 1923, above referred to, is most significant. Prior to the enactment of § 4439-4, the law provided that the surplus should be distributed among the proper county funds. The amendment above referred to, providing that any money remaining with the treasurer shall be held "for the person whose interest in the property entitles him thereto," is highly important. Manifestly, if the legislature had not desired to change the former statute, it would simply have reenacted that

statute without altering the language. While the legislative intent that the former owner of the property should receive the surplus might have been more clearly expressed, it appears to me that, by the language used, the legislature can only have intended that the former owner or his successor in interest receive such surplus.

It is, of course, true, as argued by cross-appellants, that a purchaser at a valid tax foreclosure sale acquires title as against the former owner, but at the same time, the word *interest* is very broad in its scope, and the legislature by using that word recognized, and, indeed, established, an interest which pertains to the former owner or his successor. Certainly, the legislature would never have used the word *person*, if it had intended that the surplus should go to the county funds; neither would the legislature have provided that the treasurer should hold such surplus, as the prior law providing for the distribution thereof among the county funds covered the situation as it stood prior to the 1923 amendment, plainly and completely.

I am not unmindful of certain authorities cited by cross-appellants, in which the word *person* was held to include the state, or a school district, or a municipal corporation, including a county. If the context of a law clearly indicates that the legislature intended to use the word as standing for such an entity, it would be reasonable and logical to construe the law so as to carry out the legislative intent; but it would be a most strained construction to hold in the case at bar that the word *person* means several county funds, when the legislature deliberately repudiated the language of the old law, which was plain and easily understood. It is not reasonable to construe the word *person* as meaning *county*, because there is not the slightest indication in

the language of the section that the legislature had any intention to use the word in that sense.

While the question of statutory construction now under discussion is not easy of solution, I am of the opinion that appellant is entitled to receive any surplus remaining with the county treasurer after the payment of the items covered by the statute.

This view finds some support in the cases of *Welch v. Haley,* 224 Mass. 261, 112 N. E. 860, and *Chadwick v. Cambridge,* 230 Mass. 580, 119 N. E. 958. While the statutes of Massachusetts providing for the enforcement of tax laws differ greatly from the statutes of this state, the cases cited are in line with my views of the matter now under discussion.

Cross-appellants cite the case of *Sasse v. King County,* 196 Wash. 242, 82 P. (2d) 536, in support of their argument that the former owner of real estate, whose title has been divested by tax foreclosure proceedings, has no interest in the property after the same has been sold by the county to a private purchaser. In the case cited, the former owner sought to establish his right to redeem certain real property, asking also to set aside a resale of the property made by the county to a private party. The case was rightly decided, as the proceedings on the part of the county had completely cut off any such rights as the plaintiff sought to enforce. The case is not authority for the proposition that the statute now under discussion does not vest in appellant here the right to any surplus remaining in the county treasury, under the circumstances shown by the record before us.

The majority opinion correctly holds that interest should not be computed upon the amount of taxes due after the real estate is struck off to the county at a tax foreclosure sale, and that the county cannot deduct

interest up to the date of the resale, the proceeds of which have produced a surplus.

In my opinion, the judgment appealed from should be reversed upon appellant's appeal, and affirmed on the appeal of cross-appellants.

STEINERT, ROBINSON, and SIMPSON, JJ., concur with BEALS, J.

[1]Reported in 95 P. (2d) 375.