[No. 27977. *En Banc.* July 16, 1940.]

THE STATE OF WASHINGTON, *on the Relation of The City of Seattle, Respondent,* v. KING COUNTY *et al., Appellants,* THE PORT OF SEATTLE, *Respondent.*[1]

[1]Reported in 104 P. (2d) 575.

*B. Gray Warner* and *F. M. Reischling,* for appellants.

*A. C. Van Soelen, John A. Homer,* and *Fairbrook & Williams,* for respondents.

*Robert S. Macfarlane, amicus curiae.*

MILLARD, J.—This is an action in mandamus instituted by the city of Seattle, in which the port of Seattle intervened, to require the treasurer of King county to allocate and pay to the city of Seattle and to the port of Seattle, as taxing districts of King county, under the method of apportionment contemplated by Rem. Rev. Stat., § 11293 [P. C. § 6882-132], proceeds of sales of property acquired by the county by tax deed.

The demurrer on the ground of insufficiency of facts to justify legally the relief sought, was overruled. Judgment was entered directing the treasurer of King county, as required by Rem. Rev. Stat., § 11293, to allocate and pay to the city of Seattle and to the port of Seattle, as taxing districts of King county, proceeds of resales of property located within their respective taxing districts and acquired by the county through general tax foreclosure proceedings, without deduction therefrom of any sums of money received by the treasurer either as interest or deferred payments on installment contracts of resale of such property, or as purported interest on delinquent taxes; such allocation to be in the proportion that the respective tax

levies of the taxing districts concerned bear to the aggregate of all tax levies in the county on such property according to the tax levy of the year in which the proceeds from any of such sales are received. The county treasurer has appealed.

The facts admitted by the pleadings are that at all times as alleged by respondents, appellant has refused to apportion and to pay to respondents, and to other taxing districts of King county, any part of the purchase or resale price of lands, title to which had been acquired by the county in general tax foreclosure proceedings and by the county resold, except after deduction by the treasurer and allotment to the current expense fund of King county of (1) sums equal to all interest up to the date of the tax sale and issuance of tax deed to the county; and (2) interest on deferred payments on installment contracts for sale of tax title property held by King county.

The first question presented is: Are the taxing districts of King county entitled to share the proceeds, under Rem. Rev. Stat., § 11293, from resales of property previously acquired by King county through general tax foreclosure proceedings, without any deduction of sums equal to delinquent tax "interest"; and, in the event of such resale on installment contracts, are the taxing districts of the county entitled to share in the proceeds of the resale, without any deduction of sums paid as interest on deferred payments on such contracts? That question was answered in the affirmative by the trial court.

The second question, answered in the negative by the trial court, we state as follows: Is the current expense fund of the county entitled to sums equal to the interest on delinquent taxes and to interest on deferred payments on installment contracts from the proceeds of resale of county tax-acquired property, under Rem.

Rev. Stat., § 11294 [P. C. § 6882-133], before allocation to the various taxing districts of the county of their respective shares from such proceeds?

Counsel for appellant contend that an examination of the several statutes relating to the collection of delinquent taxes will disclose a lack of intention on the part of the legislature, by the use of the word "proceeds" in Rem. Rev. Stat., § 11293, to enlarge the proportionate share of the original tax levied, which, at the time of the levy, had vested in the taxing district entitled thereto, merely because of the financial inability or unwillingness of the individual owner of the property taxed to pay the tax, which necessitated resort by the county treasurer to the final method of collection—foreclosure and sale to the county and resale at public auction of the property to collect the delinquent taxes thereon—the county bearing all the expenses of the foreclosure and marketing of the property.

Rem. Rev. Stat. (Sup.), § 11244 [P. C. § 6882-83], is invoked by appellant to sustain his claim of legal right to retain for the benefit of the current expense fund of the county the items of interest in question. That section constitutes the county treasurer the collector of all property taxes for whatever purposes and for whatever unit of government same shall be levied upon the property tax rolls. The section provides the dates of delinquency and the rate of interest to be charged upon delinquent taxes and concludes with the proviso:

"*Provided, further,* That there shall be an allowance of three per cent rebate to all taxpayers who shall pay the tax on real or personal property in one payment and in full on or before the fifteenth day of March next prior to the date of delinquency. All rebates allowed under this section shall be charged to the county current expense fund and all collections of interest on delinquent taxes shall be credited to the county current

expense fund; but the cost of foreclosure and sale of real property, and the fees and costs of distraint and sale of personal property, for delinquent taxes, shall, when collected, be credited to the operation and maintenance fund of the county treasurer prosecuting the foreclosure or distraint or sale; and shall be used by the county treasurer as a revolving fund to defray the cost of further foreclosure, distraint and sale for delinquent taxes without regard to budget limitations."

The pertinent provision of the statute for the disposition and allocation of proceeds of sales of county tax-acquired property on resale reads as follows:

"No claims shall ever be allowed against the county from any municipality, school district, road district or other taxing district for taxes levied on property acquired by the county by tax deed under the provisions of this act, but all taxes shall at the time of deeding said property be thereby canceled: Provided, that the proceeds of any sale of the property acquired by the county by tax deed shall be justly apportioned to the various funds existing at the date of the sale, in the territory in which such property is located, according to the tax levies of the year last in process of collection." Rem. Rev. Stat., § 11293.

█ The county assessor makes up the tax rolls and extends the amount of taxes on the rolls, in which form the rolls are delivered to the treasurer, who enters on the rolls any delinquent taxes for prior years. Under authority of Rem. Rev. Stat. (Sup.), § 11244, the treasurer proceeds to collect the taxes that are entered upon the roll. No interest charge is entered upon the roll until the payment of the tax. Even as to delinquent taxes, the roll does not carry a computation of delinquent interest. It is not until the taxpayer comes forward to pay his taxes that any computation for rebate or for delinquent interest is made under Rem. Rev. Stat. (Sup.), § 11244. As we stated in *Henry v. McKay,* 164 Wash. 526, 532, 3 P. (2d) 145, 77 A. L. R. 1025:

"We agree with respondent that the treasurer is not concerned with the amount of interest chargeable against any delinquent tax until the taxpayer tenders payment. When a tax is levied for any year, the amount of the tax is entered upon the tax roll; and when the tax is paid an entry is made showing the payment on the roll. There is no reason for entering the interest charge upon the roll until payment of the tax, no matter how long the tax remains unpaid. Not until payment is tendered is there any occasion for the treasurer to examine the statute to ascertain what rate of interest should be charged. Otherwise, there would be a daily, weekly, or monthly (or some other fixed period) computation and entry of interest due on delinquent taxes.

"The provision exacting payment of interest for delinquency in the payment of taxes does not make the interest a part of the tax, but pertains to the remedy employed to compel payment of the tax when due."

At the expiration of five years, no certificate of delinquency having been previously authorized and issued to private persons under the provisions of Rem. Rev. Stat., § 11278 [P. C. § 6882-117], a certificate of delinquency is issued to the county.

After notice is published as provided by law, the land involved is offered for sale at public auction; and if there is no bidder, the county shall be considered a bidder to the amount of all taxes, interest, and costs due on the property in question. The county thereby acquires title as absolutely as if purchased by an individual; however, the county does not pay anything at such sale, as would an actual bidder. Rem. Rev. Stat., § 11290 [P. C. § 6882-129]. An individual purchaser would be required to pay all taxes and interest due on the property for all subsequent years to date of sale. The treasurer computes the interest and cost on these properties to the date of sale. This, as counsel for respondents state, is the only manner in which

taxes for subsequent years enter into the foreclosure proceeding.

When the property is deeded to the county, all taxes are canceled. When the county decides to sell the real property acquired by it for taxes, it does so pursuant to Rem. Rev. Stat., § 11294, which provides for a sale either by cash or on deferred payments, with the requirement that the purchaser pay interest at six per cent per annum on the deferred payments. The board of county commissioners fixes the minimum price at which each piece of property shall be sold.

We do not find anything in this section respecting the disposition of the proceeds of the sale. The disposition of those proceeds is controlled by Rem. Rev. Stat., § 11293, which provides for apportionment to the various funds existing at the date of the sale of the proceeds of any sale of property acquired by the county by tax deed. There is no provision that any part of the proceeds shall be paid into the current expense fund and a part apportioned among the other funds. The requirement is that all the proceeds shall be apportioned.

By Rem. Rev. Stat., § 11293, all taxes are canceled when the property is deeded to the county. At the date of resale, there is no tax in existence.

The position of appellant with respect to authority under Rem. Rev. Stat. (Sup.), § 11244, of allocation to the current expense fund of sums equal to the interest on delinquent taxes and to interest on deferred payments on installment contracts from the proceeds of resale of county tax acquired property, is not tenable. No interest has been collected from any one. We concur in the trial court's view that the language "all collections of interest on delinquent taxes" in Rem. Rev. Stat. (Sup.), § 11244, contemplates *payments actually made in money* one may hold in the hand, and this by

the taxpayer. There is then a collection of the tax and the interest.

■ Clearly, the trial court was correct as to the second item, interest collected on installment contracts of resale entered into by the county under Rem. Rev. Stat., § 11294. As stated above, all taxes are canceled by force of the statute (Rem. Rev. Stat., § 11293) with vesting of the title in the county. There is no tax to bear interest or give rise to penalty incurred for non-payment for the benefit of the current expense fund of the county. While holding title in its governmental capacity, the county holds the property in trust for every fund contemplated by Rem. Rev. Stat., § 11293. No tax is collected by the resale. There is no tax to be collected. The title sold by the county bears interest upon deferred payments, but does not bear any interest upon any tax; and, of course, that interest is a part of the proceeds of the sale of lands acquired by the county by tax deed under Rem. Rev. Stat., § 11293—as much so as the sale price.

■ Counsel for appellant contend that it is evident from a reading of the tax statutes, particularly Rem. Rev. Stat. (Sup.), §§ 11273-14a and 11273-14b [P. C. §§ 6882-138½p, 6882-138½q] (Laws of 1939, chapter 104, pp. 300, 301, §§ 1, 2), relating to installment contracts on back taxes, that the legislature always intended counties to be the recipient of interest and penalties collected on delinquent taxes.

We find nothing in our statutes or opinions tending to sustain the position of appellant. Of course, as we stated above, the county current expense fund is entitled to the *interest on taxes* when the county collects interest on a delinquent tax. All taxes are canceled at time of deeding to the county. Rem. Rev. Stat., § 11293. As of the date of resale, no tax is existent. There is no statutory authority for the county to take for its cur-

rent expense fund sums by way of interest on taxes which no one ever paid. We reiterate, no interest has been collected from, or paid by, anyone.

The title acquired by the county in property at a general tax foreclosure sale becomes vested in the county, not in its proprietary capacity, but in trust for the state and for the other taxing municipalities within which the land is situated, with power and obligation on the part of the county to sell the land and fairly apportion the proceeds to the state, municipal, and other funds entitled thereto. *Longview Co. v. Cowlitz County*, 1 Wn. (2d) 64, 95 P. (2d) 376.

It is unnecessary to review all of the authorities cited. Rem. Rev. Stat., § 9393 [P. C. § 1028], invoked by counsel for appellant, is not applicable to the facts in the case at bar.

Rem. Rev. Stat., § 11293, under which all taxes on the property are canceled and the proceeds of the sale are required to be justly apportioned to the various funds existing at the date of the sale, creates a situation by which, as observed by the trial judge, "as of the date of resale there is no tax existing." There being no tax in existence, it is not conceivable that there can be any interest on the tax which the county may deduct before allocating the proceeds from the sale.

The judgment is affirmed.

ALL CONCUR.