[No. 41549.   En Banc.   May 27, 1971.]

THE CITY OF TACOMA, *Appellant*, v. PIERCE COUNTY *et al.*, *Respondents*.

*Marshall McCormick, Robert R. Hamilton, J. Benedict Zderic,* and *F. H. Chapin, Jr.,* for appellant.

*Ronald L. Hendry, Prosecuting Attorney, Judd E. Tuberg* and *Dean A. Floyd, Deputies,* for respondents.

HUNTER, J.—This is an action by plaintiff (appellant), City of Tacoma, to recover from defendants (respondents), Pierce County and Maurice Raymond, Pierce County Treasurer, certain demolition assessments from the proceeds of a county tax title sale. Summary judgment was rendered in favor of the defendants from which the plaintiff appeals.

In 1963, the City of Tacoma, pursuant to its Dangerous Building Ordinance, demolished a building on certain property at a cost of $975.62. Pursuant to RCW 35.80.030(1)(h), the city filed a certificate of demolition assessment against

said real property with the Pierce County Treasurer. The demolition assessment was entered upon the 1964 tax rolls. The above mentioned statute authorizing the city's action provides in part as follows:

(h) That the amount of the cost of such repairs, alterations or improvements, or vacating and closing, or removal or demolition by the board or officer, shall be assessed against the real property upon which such cost was incurred unless such amount is previously paid. Upon certification to him by the treasurer of the municipality in cases arising out of the city or town or by the county improvement board or officer, in cases arising out of the county, of the assessment amount being due and owing, the county treasurer shall enter the amount of such assessment upon the tax rolls against the property for the current year and the same shall become a part of the general taxes for that year to be collected at the same time and with the same interest (not to exceed six percent) and penalties, and when collected shall be deposited to the credit of the general fund of the municipality: . . .

The general taxes on the property were delinquent for 5 years. Pierce County thereupon in December 1964, foreclosed on the property. At the time of foreclosure there was no bid in the amount of the statutory prescribed minimum; therefore, under RCW 84.64.200 the county acquired title to the property.

In November of 1968, the county, at a tax title sale, sold the property under a real estate contract for $2,600. The city demanded payment in the amount of the demolition assessment from the proceeds of the sale. The Pierce County Treasurer refused payment on the ground that at the time of the 1964 foreclosure sale the demolition assessment was cancelled by operation of law under RCW 84.64.230, and therefore the city was not entitled to share in the proceeds of the sale.

The trial court ruled in favor of the defendants. This appeal followed.

The sole issue in this case is whether the City of Tacoma, after it has filed a certificate of demolition assessment

against real property which is entered upon the general tax rolls and the county subsequently purchases the property at a general tax foreclosure sale, is entitled to share in the proceeds when the county resells the property.

█ This case hinges upon our interpretation of the statute authorizing the city demolition assessment, RCW 35.80.030(1)(h), and the statute providing for the disposition of proceeds of the resale of tax title property by the county, RCW 84.64.230.

The latter statute provides as follows:

> No claims shall ever be allowed against the county from any municipality, school district, road district or other taxing district for taxes levied on property acquired by the county by tax deed under the provisions of this chapter, but all taxes shall at the time of deeding said property be thereby cancelled: *Provided,* That the proceeds of any sale of any property acquired by the county by tax deed shall be justly apportioned to the various funds existing at the date of the sale, in the territory in which such property is located, according to the tax levies of the year last in process of collection.

In construing RCW 84.64.230, we have held that when property is acquired by the county in a foreclosure proceeding all taxes are thereby cancelled, and when the county resells the property the disposition of the proceeds is controlled by the proviso of this statute directing apportionment of such proceeds to the various funds existing at the date of sale. *Wolff v. Commercial Waterway Dist. 1,* 14 Wn.2d 45, 127 P.2d 262 (1942); *State ex rel. Seattle v. King County,* 4 Wn.2d 589, 104 P.2d 575 (1940); *Commercial Waterway Dist. 1 v. King County,* 197 Wash. 441, 85 P.2d 1067 (1938). The word "funds" refers to those funds created and maintained by general tax levies, and does not absent special legislation to the contrary refer to local assessments. *See* Ops. Att'y Gen. 1929-30, 662-3, 700-01; Ops. Att'y Gen. 1915-16, 309-10. This interpretation is consistent with those cases wherein we have held that the lien of general taxes is paramount, and a foreclosure of a general tax lien, in the absence of a statute to the contrary, de-

stroys the lien of all special assessments against the same property. *Pennsylvania Co. v. Tacoma,* 36 Wash. 656, 79 P. 306 (1905); *Ballard v. Ross,* 38 Wash. 209, 80 P. 439 (1905). Accordingly, the proceeds that come to the county through the sale of tax title property are to be distributed to those funds created and maintained by general tax levies, unless the legislature has expressly provided that the special assessment shall constitute a lien of equal rank with the general tax lien or has preserved the lien of local assessments by allowing them to share in the proceeds.

The plaintiff contends that RCW 35.80.030 (1) (h), which provides that the demolition assessment shall become a part of the general taxes must be construed to mean that the demolition assessment is a lien of equal rank with the general tax lien. The plaintiff then argues that it is entitled, by operation of RCW 84.64.230, to a pro rata distribution of the proceeds when the property is resold.

The plaintiff, in support of its position, cites *Commercial Waterway Dist. 1 v. King County, supra.* In that case we were concerned with a lien authorized by a waterway assessment statute. That statute, Rem. Rev. Stat. § 9754 (Laws of 1913, ch. 46, § 4, p. 119), provides in part that waterway assessments:

> shall be placed upon the general taxrolls in the office of the county assessor and shall be deemed for all purposes a part of the general taxes, and shall constitute liens against each such lot or tract of land of equal rank with state, county and city taxes and shall have the same priority over all other liens as state, county and city taxes have, and shall be subject to the same interest and penalties in case of delinquency as in case of general taxes, and for all purposes of delinquency, certificates of delinquency, foreclosure and other proceedings leading up to final payment, enforcement and collection, such assessments shall be deemed a part of the general taxes as aforesaid.

We therein held that the waterway district was entitled to share pro rata in the proceeds of the sale of tax foreclosed property.

It is true, as the plaintiff contends, that the statute in the *Waterway* case and the statute authorizing the demolition assessment contain similar language declaring that the respective assessments shall be part of the general taxes. However, RCW 35.80.030(1)(h) does not provide that the demolition assessment shall constitute a lien against the property of equal rank with state, county and municipal taxes as does the waterway assessment statute.

In *Keene v. Seattle*, 31 Wash. 202, 71 P. 769 (1903), it was argued that the provisions of a street assessment statute, permitting street assessments to be collected along with general taxes, placed the special assessment upon an equality with general taxes. The statute referred to, found in Laws of 1893, ch. 71, § 8, p. 169, provided:

> [T]he city treasurer shall from time to time certify the same, together with the accumulated penalties and interest thereon, to the county treasurer, who shall enter the same on the general county assessment roll against the property so taxed or assessed in a separate column head, "Delinquent local assessments, city of ............," in the *manner directed by such charter, and the same shall be a part of the tax due on such property and with interest shall be collected as other taxes, separate account being kept thereof, and if not paid within the time fixed for the payment of other taxes, shall be collected as other taxes are collected, together with the additional charges, penalties and interests authorized to be charged and collected, on other delinquent taxes;* and all other proceedings shall be taken thereon as if the same were originally a part of the general tax assessed against such property.

(Italics ours.) We held that this language merely provided for a convenient method of collecting local improvement assessments, and did not create a lien of equal rank with the general tax lien. In *Keene* we said at page 205:

> We think a fair interpretation of the language last quoted, and of the whole section, is that it relates to the method of collection which the city may adopt if it shall choose to do so. It is not stated that the lien for local assessments shall be of equal rank with the general tax lien, . . . we think it cannot be held that such was

intended, and especially so in the absence of a specific statement to that effect.

It appears that our decision in the *Keene* case, and similar decisions in *Ballard v. Way*, 34 Wash. 116, 74 P. 1067 (1904), and *Pennsylvania Co. v. Tacoma*, 36 Wash. 656, 79 P. 306 (1905), prompted the legislature to enact special legislation to preserve the lien of local improvement districts after a tax foreclosure sale. RCW 35.49.120 and RCW 35.49.160 (Laws of 1911, ch. 98, § 40), expressly provide that the holder of a certificate of delinquency for general taxes takes the property subject to the local improvement district assessment; and where tax title property is sold by the county, excess proceeds after general taxes are satisfied, shall be used to discharge local improvement district assessments.

In the present case the legislature did not provide in RCW 35.80.030(1)(h) that the demolition assessment shall constitute a lien with equal rank to that of general taxes, nor did the legislature provide that a city should share in the proceeds in excess of the general taxes. We therefore hold that the contention of the plaintiff-city that it is entitled to share in the proceeds of the sale of the tax title property cannot be sustained.

The judgment of the trial court is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HALE, NEILL, STAFFORD, and WRIGHT, JJ., concur.