[No. 11518.   Department Two.   February 28, 1914.]

## A. J. GUSTAVESON, *Respondent*, v. GEORGE DWYER, *Appellant*.[1]

TAXATION—LIEN OF TAXES—FORECLOSURE—TITLE—ADVERSE POSSES-SION. The foreclosure of a tax lien being a proceeding *in rem*, vests in the purchaser a new title, independent of claims by adverse possession, under Rem. & Bal. Code, § 9230, declaring the lien of general taxes to be superior to all other liens and claims upon the property.

LIMITATION OF ACTIONS—AGAINST STATE—TAX TITLE HELD BY COUNTY. Where a county purchased property at a general tax foreclosure sale for want of other purchasers, it holds the same in trust for the state, county, and other political subdivisions entitled to an apportionment of the tax on a resale; hence the statute of limitations does not run in favor of one in adverse possession of the land while the title is held by the county; in view of Rem. & Bal. Code, § 167, providing that there shall be no limitation to actions brought in the name or for the benefit of the state and that claims predicated upon the lapse of time shall not be asserted against the state.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered April 28, 1913, upon findings in favor of the plaintiff, in an action to quiet title.   Affirmed.

*James Garvey, Guy E. Kelly*, and *Thomas MacMahon*, for appellant.

*A. O. Burmeister* and *Gordan & Remann*, for respondent.

PARKER, J.—The plaintiff seeks recovery of possession of so much of lot 8, in block 9, of "Tacoma City," a portion of the present city of Tacoma, as the defendant is in possession of, and to be adjudged the absolute owner of all of that lot, as against the claims of the defendant.   Findings and judgment being rendered by the superior court in favor of the

[1]Reported in 139 Pac. 194.

plaintiff as prayed for, the defendant has appealed therefrom to this court.

Respondent claims title to all of the lot under a tax deed therefor, executed by the treasurer of Pierce county to Pierce county, and mesne conveyances. Appellant claims title to approximately the northerly fifty feet of the lot, resting his claim of title entirely upon adverse possession. The learned trial court rested its decision principally upon the theory that appellant's possession had, in no event, been of such exclusive character, however long continued, as to give him title as against respondent. Since this ground of decision rests upon questions of disputed fact as to which there may be some room for argument, and since we conclude that appellant's present adverse possession, however continuous and exclusive, could in no event have commenced, in the eyes of the law, ten years before the commencement of this action, we think the cause may be more satisfactorily disposed of by resting our decision upon that ground.

The following controlling facts are either conceded or conclusively proven: In the fall of 1902, the then treasurer of Pierce county executed a tax deed to Pierce county for the whole of the lot, in pursuance of a tax foreclosure and sale thereon had on August 23, 1902. The county thus lawfully acquired tax title to the lot by virtue of becoming the owner of a tax delinquency certificate for want of another purchaser, and by virtue of becoming the purchaser of the lot at the tax foreclosure sale for want of another purchaser, in pursuance of the provisions of our revenue law, found in Rem. & Bal. Code, §§ 9257, 9260 and 9268 (P. C. 501 §§ 241, 247, 265). Thereafter, on February 23, 1904, the then treasurer of Pierce county executed a deed for the whole of the lot to Charles E. Hill, in pursuance of proceedings and sale duly had under the provisions of Rem. & Bal. Code, § 9272 (P. C. 501 § 273), relating to resale of tax title lands acquired by counties. Thereafter, on March 8, 1906, Charles E. Hill and wife executed a deed for the whole of the lot to respondent,

who has ever since been in possession of all of the lot except approximately the northerly fifty feet of the lot now in the possession of appellant.

Since the conveyance of the lot by the county to Charles E. Hill, he or respondent has paid taxes thereon. Neither appellant nor any of his claimed predecessors in interest have ever paid taxes upon any portion of the lot. For the purpose of our discussion, we shall regard February 13, 1913, as the date of the commencement of this action, that being the date of the filing of the amended complaint herein, which, in a measure, changed the issues from those tendered in the original complaint, and which amended complaint was answered by appellant upon the merits and the trial proceeded upon the issues thus formed without objection. It is therefore plain that, while this action was commenced more than ten years after the tax sale of the lot to the county, it was commenced less than nine years after the county parted with its title thereto to Charles E. Hill.

In the light of the provisions of our revenue statutes, and the decisions of this court, it seems unnecessary to indulge in lengthy discussion to demonstrate that, in no event, could appellant's possession existing prior to the tax sale to the county on August 23, 1902, however exclusive or adverse that possession may have been, in the least impair the tax title of the county then acquired or the title of its grantees, after that date. By the provisions of Rem. & Bal. Code, § 9230 (P. C. 501 § 205), the lien of general taxes is declared to be superior to all other liens and claims upon the property against which such taxes are charged. The regular foreclosure of such a lien as was concededly had against this lot has, under our revenue law, all the force of a proceeding *in rem*, *Continental Distributing Co. v. Smith*, 74 Wash. 10, 132 Pac. 631, and vests in a purchaser at a sale held under such foreclosure a new title independent of all previous titles or claims of title to the property. *Hanson v. Carr*, 66 Wash. 81, 118 Pac. 927. Manifestly, both record and possessory titles are equally ab-

solutely destroyed by such a foreclosure. Such is the theory upon which the following decisions of this court were rendered, though they involved only the question of superiority of general tax liens over local assessment liens. *McMillan v. Tacoma*, 26 Wash. 358, 67 Pac. 68; *Keene v. Seattle*, 31 Wash. 202, 71 Pac. 769; *Ballard v. Way*, 34 Wash. 116, 74 Pac. 1067, 101 Am. St. 993; *Pennsylvania Co. v. Tacoma*, 36 Wash. 656, 79 Pac. 306; Black, Tax Titles (2d ed.), § 420. Clearly, adverse possession prior to the creation of a tax title lends not the least support to the title claimed thereafter.

Assuming that appellant's possession was continuous while the county held its tax title to the lot from August 23, 1902, until conveyance to Hill on February 23, 1904, was such possession of any avail to appellant in support of his present claim of title by adverse possession? If not, manifestly, his legal adverse possession did not continue for ten years prior to the commencement of this action, since less than nine years has expired since the county's conveyance to Hill. Counsel for appellant insist that the county held title to the lot in its private capacity and not for any specific public use, and that, therefore, the statute of limitations would run against it and in favor of appellant's adverse possession as against a private person. Counsel rely upon the provisions of Rem. & Bal. Code, § 167 (P. C. 81 § 79), reading as follows:

"The limitations prescribed in this act (chapter) shall apply to actions brought in the name or for the benefit of any county or other municipality or quasi municipality of the state, in the same manner as to actions brought by private parties: Provided, that there shall be no limitation to actions brought in the name or for the benefit of the state, and no claim of right predicated upon the lapse of time shall ever be asserted against the state."

These provisions might be regarded as lending support to counsel's contention if the tax title to the lot were in the county in its own exclusive right instead of being in the county in trust for the state, the county, and other political

subdivisions of the state within the county. The nature of the county's trust in this regard is found in the provisions of our revenue statutes which, when critically read, we think plainly show the county's title to land so acquired is a trust of which the state is a beneficiary. Had the county been asserting its right to this lot by an action in court before · conveyance to Hill, such action would have been waged by the county "for the benefit of the state" as well as the county and other political subdivisions. This being true, it follows that the statute did not run in favor of appellant while the title to the lot was in the county. By the provisions of Rem. & Bal. Code, §§ 9219, 9228 (P. C. 501 §§ 175, 201), the county treasurer is the collector of all general taxes levied for the state as well as all of the political subdivisions of the state within the county, and is required to remit collections so made in behalf of the state to the state treasurer from month to month. By the provisions of §§ 9257, 9260, 9268 and 9272, *supra*, property charged with taxes within the county may be foreclosed, the land purchased by the county for want of other purchasers, and the land thereafter sold by the county. Even these provisions seem to lead to the conclusion that the land, when so purchased by the county, is held in trust by the county for the state and the political subdivisions within the county. This inference is rendered practically conclusive by the provisions of Rem. & Bal. Code, § 9271 (P. C. 501 § 271), which read:

"No claim shall ever be allowed against the county from any municipality, school district, road district or other taxing district for taxes levied on property acquired by the county by tax deed under the provisions of this act, but all taxes shall at the time of deeding said property be thereby cancelled: Provided, that the proceeds of any sale of any property acquired by the county by tax deed shall be justly apportioned to the various funds existing at the date of the sale, in the territory in which such property is located, according to the tax levies of the year last in process of collection."

Further discussion is unnecessary to demonstrate that the statute of limitations did not run in favor of appellant's adverse possession while the title to the lot rested in the county in trust for the state, and the political subdivisions within the county. If the state were not one of the beneficiaries of this trust, there might be merit in counsel's contention; but, the lot being held by the county for the state as one of the beneficiaries, the statute could no more run in favor of appellant while the lot was so held than appellant could invoke the statute of limitations in an action prosecuted by the county for the benefit of the state to recover possession of the lot. Since that condition did not cease to exist until February 23, 1904, less than nine years elapsed before the commencement of this action within which the statute of limitations would have run in favor of appellant. It is not contended here—indeed, could not be—that any other statute of limitations than the ten-year statute, Rem. & Bal. Code, § 156, (P. C. 81 § 53), would be available to appellant.

Counsel for appellant seem to place some reliance upon our decision in *Franklin County v. Carstens*, 68 Wash. 176, 122 Pac. 999. The controversy there involved really turned upon the power of the county commissioners to compromise a pending suit where adverse possession and estoppel were among the issues touching the right to real property. We do not think that decision is in any way controlling here.

We are of the opinion that appellant's adverse possession, however continuous and exclusive it may have been, has not existed for a period of ten years in the sense that it is available to him in the maintenance of his claimed title to the northerly fifty feet of the lot.

The judgment is affirmed.

CROW, C. J., MORRIS, FULLERTON, and MOUNT, JJ., concur.