[No. 27169. Department Two. December 27, 1938.]

COMMERCIAL WATERWAY DISTRICT NO. 1 OF KING COUNTY *et al.*, *Appellants*, v. KING COUNTY, *Respondent.*[1]

[1]Reported in 85 P. (2d) 1067.

*Shorett, Shorett & Taylor* and *Evans, McLaren & Littell,* for appellants.

*B. Gray Warner* and *Wm. Hickman Moore,* for respondent.

BEALS, J.—Commercial waterway district No. 1, of the county of King, state of Washington, one of the plaintiffs in this action, is a municipal corporation of the state of Washington, organized and existing pursuant to law. The district, some years since, improved the Duwamish river, a navigable stream in King county, and issued negotiable bonds in order to provide funds with which to pay for the improvement. Plaintiff Carl R. Heussy is the owner of one of these unpaid bonds.

In due course, the district levied against the land lying within its boundaries assessments in proportion to the benefits adjudicated by the court to have been received by the land because of the improvement, and issued its negotiable warrants and bonds in large amounts, all of which are past due, interest in large sums having accumulated thereon. For payment of these obligations, the district relies entirely upon the collection of the assessments above referred to. The assessments against many parcels of land within the district remained unpaid, together with general taxes.

King county instituted tax foreclosure proceedings against these parcels of land, as provided by law, including in the foreclosure the total balance of unpaid waterway assessments, and pursuant to tax foreclosure sale, has acquired title in its name to many tracts of land within the district.

Under the law, when land owned by a county pursuant to tax foreclosure, in the situation above described, is sold, the waterway district shall receive its *pro rata* share of the money paid for the land. Rem.

Rev. Stat., § 9754 [P. C. § 1394], provides that waterway assessments

" . . . shall be placed upon the general tax-rolls in the office of the county assessor and shall be deemed for all purposes a part of the general taxes, and shall constitute liens against each such lot or tract of land of equal rank with state, county and city taxes and shall have the same priority over all other liens as state, county and city taxes have, and shall be subject to the same interest and penalties in case of delinquency as in case of general taxes, and for all purposes of delinquency, certificates of delinquency, foreclosure and other proceedings leading up to final payment, enforcement and collection, such assessments shall be deemed a part of the general taxes as aforesaid. . . ."

Plaintiffs instituted this action against King county, alleging facts as above stated; that the county had, pursuant to tax foreclosure, taken title to many parcels of land within the waterway district; that the county held this property for the benefit of plaintiff district, in the proportion which the total amount of unpaid district assessments bore to the total amount of unpaid general taxes; that the county had no right, power, or authority to sell the equitable and beneficial undivided interest of plaintiff district in the several tracts of land, but that the county and its officers proposed to sell the land without requiring the district to join in any conveyance thereof. Plaintiffs prayed that the waterway district be decreed to be an equitable and beneficial owner with the county of the lands hereinabove referred to, to the extent of an undivided interest therein in proportion to the amount of its unpaid assessments, and that the county and its officers be enjoined from selling, or assuming power to sell, the beneficial title of the waterway district in or to any of the lands.

To this complaint, the county demurred upon two grounds: First, that it appears upon the face of the complaint that there is a defect of parties plaintiff; and second, that the complaint fails to state facts sufficient to constitute a cause of action. After argument, the trial court sustained the county's demurrer; and, plaintiffs electing to stand on their complaint and having refused to plead further, judgment was entered dismissing the action, from which judgment plaintiffs have appealed.

Error is assigned upon the ruling of the trial court sustaining respondent's demurrer, and upon the entry of judgment dismissing the action.

The trial court was of the opinion that, under the law, the officers of respondent county have authority to sell the lands owned by the county as the result of tax foreclosure proceedings, upon which lands appellant district owned assessment liens. Appellants contend that the county commissioners have no such authority, and that appellant district owns a beneficial title or interest in such real estate, and that the county cannot sell the lands at the discretion of the county commissioners, or at all, unless the district joins with the county in the conveyance or in approving or authorizing the same.

The principle that the power of taxation is an essential and basic attribute of sovereignty, is well established. 61 C. J. 76, § 7(A); 26 R. C. L. 26, § 12. This principle has been repeatedly recognized in the decisions of this court.

In the case of *State ex rel. Board of Commissioners v. Clausen,* 95 Wash. 214, 163 Pac. 744, this court said:

"The power of taxation is an incident of sovereignty and is possessed by the state without being expressly conferred by the people. It is a legislative power, and when the people by their constitution create the department of government upon which they confer the

power to make laws, the power of taxation follows as a necessary part of the more general power."

In the case of *Everett v. Adamson,* 106 Wash. 355, 180 Pac. 144, we said:

"We have held consistently that taxation is a matter involving the sovereign power of the state and subject only to the limitations which that sovereignty has imposed upon itself, either in the constitutional or positive law of the state."

In the case of *Shelton v. Klickitat County,* 152 Wash. 193, 277 Pac. 839, this court, referring to tax foreclosure proceedings instituted by the county, said:

"True, we have held that, upon a county becoming the purchaser at a tax foreclosure sale for want of other bidders, the county, upon the deed being issued to it in pursuance of such sale, acquires title in fee as against the owner. But we have also held, in harmony with the above quoted language of Rem. Comp. Stat., § 11309, that the title thereby acquired becomes vested in the county, not in its proprietary capacity, but in trust for the state, for itself and for the other taxing municipalities within which the land is situated, with power and obligation on the part of the county to sell the land at some opportune time and justly apportion the proceeds to the state, municipal and other funds. *Gustaveson v. Dwyer,* 78 Wash. 336, 139 Pac. 194; 83 Wash. 303, 145 Pac. 458. This is but a part of the statutory tax collecting process, which process is not completed until such sale is finally made by the county, to the end that the proceeds thereof be apportioned as prescribed by § 11309, above quoted."

In the case of *Love v. King County,* 181 Wash. 462, 44 P. (2d) 175, we said:

"We need not spend any time in discussing the elemental proposition that the power of taxation is an essential and inherent attribute of sovereignty and belongs to, and is possessed by, the government as a matter of right without being expressly conferred by the people."

In the recent case of *Walla Walla v. State, ante* p. 357, 85 P. (2d) 676, we held that a lien of the state upon real estate for an inheritance tax was barred by a county foreclosure of a lien for delinquent taxes. In the course of the opinion, we said:

"By repeated decisions of this court, it has become settled law in this state that a general tax lien is paramount over every other lien or burden to which property may be subjected. [Citing cases.] Any exception to this rule must come through legislative enactment."

Rem. Rev. Stat., § 11290 [P. C. § 6882-129], a portion of the act relating to foreclosing liens for delinquent taxes, provides in part as follows:

"At all sales of property for which certificates of delinquency are held by the county, if no other bids are received, the county shall be considered a bidder for the full area of each tract or lot to the amount of all taxes, interest and costs due thereon, and where no bidder appears, acquire title thereto as absolutely as if purchased by an individual under the provisions of this act; . . ."

Rem. Rev. Stat., § 9754, quoted in part above, provides that assessments levied by such municipal corporations as appellant district "shall be deemed a part of the general taxes." This gives to such organizations as appellant district an ultimate advantage not accorded to other non-taxing municipal corporations having the power to assess for local benefits.

Appellants rely upon the well established rule that the powers of county commissioners are purely statutory, and that such boards can exercise only such powers as are expressly conferred by the constitution and laws of the state, or as arise by necessary implication from those expressly granted, or as are necessary in the performance of the duties imposed by law. This doctrine is well established, and needs no citation of

authority. It is also true, as stated by appellants, that commercial waterway districts and their commissioners enjoy very broad statutory powers; indeed, it would seem that, in some particulars, these districts have been specially favored by the legislature.

Appellants cite from Rem. Rev. Stat. (Sup.), § 11294 [P. C. § 6882-133] (Laws of 1937, chapter 68, p. 233, § 1) the following:

"Real property hereafter or heretofore acquired by the several counties of the State of Washington for taxes shall be subject to sale by order of the board of county commissioners of the several counties of this state at any time after the counties shall have received a deed therefor, when in the judgment of the board of county commissioners they deem it for the best interests of the county to sell the same. When the board of county commissioners desires to sell any property so acquired, it may, if deemed advantageous to the county, combine any or all of the several lots and tracts of land so to be sold in one or more units;"

arguing that it should be held that this portion of the statute shows affirmatively that the county is not authorized to sell any property except such as the county beneficially owns.

Under the law, counties hold the proceeds arising from the sales of such tax-acquired lands subject to the division of such proceeds between different funds, as provided by law. It cannot be held that the statute relied upon by appellants makes appellant district the owner of any interest in the land. The district simply is entitled to receive its *pro rata* portion of the proceeds of the property when the same is sold.

The receipt of money from general taxation is vitally necessary to the support of the state government. If appellants' contention that such lands as are here in question can be sold only with the joint concurrence of the county commissioners and the commissioners of

appellant district be upheld, the raising of necessary revenue might be seriously delayed. The land, while owned by the county, is not taxed. It is in the interest of the county that the land be restored to private ownership and again placed upon the tax rolls. It might well be deemed to be for the interest of the district that the land be held, free from taxes, for some possible future rise in value. If the two agencies could not agree upon the sale price, a serious condition might well result, and the collection of necessary tax revenue be hampered. The fact that this lawsuit was instituted demonstrates that the interests of appellant district and the respondent are believed to be antagonistic.

Appellants cite few authorities to support their contention. They rely upon the general rule that a trustee must administer the trust for the beneficiaries, and not for his own advantage, to their detriment. This is the general law, but does not apply to such a situation as is here presented.

Appellants also cite the case of *McCook v. Johnson,* 281 N. W. (Neb.) 69, in which the supreme court of Nebraska held that a city, purchasing and foreclosing a tax sale certificate on real estate, did so as trustee of an express trust, for the use and benefit of the state and all other governmental subdivisions entitled to participate in the distribution of the proceeds. The laws of Nebraska providing for collection of delinquent taxes and assessments differ materially from ours. The differences are so great that it is difficult to draw any parallel between them. It appeared that the city of McCook purchased and foreclosed a tax sale certificate. The county intervened, asserting a tax lien. After decree of foreclosure, the property was put up at sheriff's sale, the city bidding in a certain lot for $350, which amount included all taxes and assessments. The city claimed the right to bid in the property as

trustee for all governmental subdivisions entitled to participate in the distribution of the delinquent taxes and special assessments enumerated in the tax sale certificate upon which the decree of foreclosure was rendered, and claimed the further right to apply, as a credit upon the bid, the amount found due by the decree. On objections to confirmation, the trial court ordered the city to pay to the sheriff the $350 which it bid, and on its refusal, sustained objections to the sale, and ordered the property resold.

The city contended that the sale should be confirmed without the city being required to pay the money which it bid, and that the city would hold the property as trustee until it should have disposed of the same to some private purchaser, when the money would be distributed; while the county contended that, when the foreclosure ended in a sale, any trust relation was ended, and that it was the duty of the city, as purchaser, to pay the amount bid in cash, so that the same could be immediately distributed to the governmental subdivisions entitled to their respective shares thereof. The court held that the statute of Nebraska did not have the effect of continuing the city as trustee of any kind of a trust after the sheriff's sale of the property to the city; and that the city, having purchased and foreclosed a tax sale certificate on real estate, did so as trustee of an express trust, for the use and benefit of the state and all other subdivisions; that the trust property or *res* was the tax sale certificate; that the express trust terminated on the sale of the certificate or on completion of the foreclosure and the distribution of the proceeds; and that the city could not bid in the property without paying in cash the amount of its bid, so that the money could immediately be distributed. The court called attention to the general rule that a trustee could not himself purchase

property, but that the statute as to tax liens and their foreclosure provided legislative modification of that rule. It was held that the city was obligated to pay the amount of its bid in cash, the court saying:

"To allow the city to bid in the real estate without paying in the money would permit it to speculate on the property, to hold out from the other parties interested their share of the proceeds of judicial sale and to account to them whenever it was satisfied to dispose of the property."

The court assumed that, if the contention of the city was correct and under the statutes the city could take title to the property, it would have the right to sell the land when, and not until, it pleased, and apparently for any price it desired to accept.

The case cited does not support appellants' contention. The foreclosure was by a city, not by a county for general taxes. Under our laws governing collection of delinquent taxes and assessments, the general taxes come first, the statute providing that assessments levied by such a municipal corporation as appellant district rank with the general taxes being an exception. The evil which would result from allowing the city to take title to the property, in trust for the county, and then delay the payment of the general taxes until the city should deem it advantageous to sell the property, was noted by the court in the portion of the opinion above quoted. The court held that the city had no right to take title to the land and hold the same as trustee.

Appellant district is, of course, purely a creature of statute, and can exercise only such powers as are specifically accorded to it by statute, or fairly implied as incidental and essential to the powers so granted.

In the case of *Griggs v. Port of Tacoma*, 150 Wash. 402, 273 Pac. 521, referring to the powers of a port dis-

trict, we said: "We have also held, however, that where the power is doubtful as to municipal grant, it is denied."

No statute vests appellant district with actual ownership in tax foreclosed property sold to the county, or with authority to exercise any share in the control of such property or the sale thereof, and it cannot be held that such power, right, or authority is fairly implied as incidental or essential to the right granted to share *pro rata* in the proceeds of the property.

Under our law, the county, the general taxing agency, does acquire title to tax foreclosed land "as absolutely as if purchased by an individual under the provisions of this act." Rem. Rev. Stat., § 11290, *supra.* Of course, persons interested in preserving liens created by appellant district may protect their interests by the usual methods open to mortgagees or other lienholders. Such questions have no bearing upon the matters to be here determined.

█ The collection of general taxes is the first consideration. While the legislature has favored commercial waterway districts, by providing that their assessments share with general taxes in prorating funds received from the sale of tax foreclosed property, existing statutes afford no warrant for judicial interpretation thereof in such manner as to grant such districts the right to participate with the county commissioners in selling such property, and to establish in such districts an actual ownership, or interest, in the property, by whatever name it might be called, which would prevent the county commissioners from selling the property in the exercise of their discretion. The selling of tax foreclosed property is merely one step in the collection of general taxes, and in the absence of a contrary legislative intent, clearly expressed, it must be held that the sole authority to make such sales is

vested by existing laws in the county commissioners or representatives of the general taxing authority.

In the recent case of *Sasse v. King County*, 196 Wash. 242, 82 P. (2d) 536, we said:

"When a county purchases land at a general tax foreclosure sale, for want of other purchasers, the county takes and holds the land, not in its proprietary capacity, but in trust for the state and the various taxing municipalities within which the land lies. [Citing cases.]

"A resale of the land by the county is but a part of the statutory tax collecting process, which is not complete until such resale is finally made by the county, to the end that the proceeds thereof shall be justly apportioned to the various funds entitled thereto. [Citing cases.]"

The trial court did not err in sustaining respondent's demurrer and in dismissing the action, and the judgment of dismissal is accordingly affirmed.

STEINERT, C. J., MILLARD, GERAGHTY, and SIMPSON, JJ., concur.