[No. 28371. *En Banc.* September 25, 1941.]

COMMERCIAL WATERWAY DISTRICT NO. 1 OF KING COUNTY *et al., Appellants,* v. KING COUNTY, *Respondent.*[1]

[1]Reported in 117 P. (2d) 189.

*Shorett, Shorett & Taylor,* for appellants.

*B. Gray Warner, Wm. Hickman Moore,* and *Wm. R. Bell,* for respondent.

MILLARD, J.—Plaintiff Commercial Waterway District No. 1 of King county, which was organized many years ago under the provisions of Rem. Rev. Stat., § 9724 [P. C. § 1366] *et seq.,* extensively improved the Duwamish river in King county, and the maximum benefits were duly assessed against adjacent real estate. Negotiable bonds and a considerable amount of con-

struction warrants were issued by the district in payment of the cost of the improvement. There are now outstanding bonds in excess of one hundred seventy-five thousand dollars and construction warrants in excess of ninety thousand dollars. The unpaid bonds are long past due, with accumulations of interest. The district does not have general taxing power, and payment of the outstanding bonds and warrants can be made only from collection of the benefit assessments previously levied by the district against each parcel of real property within the district.

Plaintiff Carl R. Heussy is the owner of one of the district's unpaid bonds.

In 1927, defendant, King county, commenced a proceeding for the foreclosure of general taxes against a large number of parcels of real estate, including a considerable number of descriptions against which were unpaid assessments levied by plaintiff district. A great deal of this property was sold to the county, as no bidders appeared at the tax foreclosure sale.

On October 31, 1927, which was subsequent to the tax foreclosure sale, defendant county, by resolution passed by its board of county commissioners, established an airport and included within the airport a number of parcels of property which the county had acquired through the tax foreclosure proceeding, many of which parcels were subject to unpaid assessments levied by plaintiff waterway district. Thereafter the county expended in excess of one million dollars in the improvement of the airport, the facilities of which have been leased by the county to commercial companies operating air lines.

The county paid to the district, under date of November 15, 1928, the amount of the district's assessments against a number of tracts included within the airport, but failed to pay the assessments against other

tracts included in the airport. Since establishing the airport, the county has made no effort to sell the property included within its boundaries, but has used, and apparently intends to continue to use, the property as an airport. The principal of the district's assessment which the county failed to pay to the district, amounts to $14,844.09. This action was instituted by the district and by Carl R. Heussy, as joint plaintiffs, to obtain a decree requiring the county to pay to the district the amount of the assessments above described, and also interest upon the assessments which the county paid to the district, that payment having included the principal only, without accrued interest.

The county pleaded affirmatively, in bar of the action, the statute of limitations, and laches of the plaintiffs. The cause was tried to the court, which found that all of the acts of defendant county of which plaintiffs complain had occurred more than twelve years prior to the institution of this action. From the foregoing finding, the court concluded that the action was barred by the statute of limitations, and that, because of their laches in not filing their complaint within a reasonable time after the occurrence of the acts, plaintiffs were not entitled to prevail. Judgment was entered dismissing the action. Plaintiffs have appealed.

Counsel for appellants insist that the statute of limitations and laches can not be successfully invoked to defeat an action brought by appellant district in a governmental capacity to enforce the sovereign power of taxation. Counsel for appellants also argue that respondent, since the tax foreclosure, has held title to the property in question in trust for the benefit of appellant district and other taxing units; therefore, the statute of limitations would not commence to run until repudiation of the trust by respondent, or the commission by respondent of acts hostile to, or in

fraud of, the rights of beneficiaries of the trust, and of which appellants had actual knowledge, or of which knowledge must be imputed to them. Appellants contend that they did not have actual knowledge of the facts, and that such knowledge should not be imputed to them. While they admit that respondent had established the airport, they contend that they did not know that the property in question constituted a part of the airport.

■ It is the settled law in this state that, when a county purchases land at a general tax foreclosure sale for want of other purchasers, the county takes and holds the land not in its proprietary capacity, but in trust for the state and the various taxing units within which the land lies. A resale of land by the county is but a part of the statutory tax collecting process, which is not complete until such resale is finally made by the county, to the end that the proceeds thereof shall be justly apportioned to the various funds entitled thereto. *State ex rel. King County Water District v. Stacy, ante* p. 248, 116 P. (2d) 356.

The question whether, if a county holding tax foreclosed property as trustee sold that property to itself and held same in the county's proprietary capacity, the rule would be the same as to the distribution of the proceeds of the sale among the taxing units entitled thereto, is not presented. By this action, the waterway district, in its governmental capacity, sought to compel the performance of a statutory duty in the tax collecting process. The district is endeavoring to protect its interests in the tax collecting process, which is "an essential and basic attribute of sovereignty." *Commercial Waterway District No. 1 v. King County,* 197 Wash. 441, 85 P. (2d) 1067.

■ Concededly, the county held the land, which

was acquired by purchase at tax sale for want of another purchaser, in a governmental capacity as distinguished from a proprietary capacity; therefore, the statute of limitations is not a defense. No step in the tax collecting process is subject to the defense of the statute of limitations. *Gustaveson v. Dwyer*, 83 Wash. 303, 145 Pac. 458; *Home Owners' Loan Corp. v. Tacoma*, 4 Wn. (2d) 166, 102 P. (2d) 832.

█ The county was holding title as part of the tax collecting procedure in trust for the other taxing units. It was the statutory duty of the county to complete the tax collecting process by resale of the property and distribution of the proceeds derived therefrom to the various funds entitled thereto. The county, in establishing an airport, did not make any effort by condemnation procedure, or otherwise, to acquire any title to the property different from the title in trust it acquired by virtue of the tax foreclosure proceeding. The acts of the county, in establishing the airport in 1927, and the leasing of that airport to two transcontinental air lines, from which lease the county derived revenue, can not prejudice the rights of other taxing units—statutory *cestuis que trustent*—which are entitled to share in those proceeds.

It was the duty of the county to resell the property, to which it acquired title in trust for the other taxing units, and distribute, as prescribed by the statute, the proceeds from the sale; and until the resale was made the tax collecting process was not completed.

"The title acquired by the county in property at a general tax foreclosure sale becomes vested in the county, not in its proprietary capacity, but in trust for the state and for the other taxing municipalities within which the land is situated, with power and obligation on the part of the county to sell the land and fairly apportion the proceeds to the state, municipal, and other funds entitled thereto." *State ex rel.*

*Seattle v. King County,* 4 Wn. (2d) 589, 104 P. (2d) 575.

"The selling of tax foreclosed property is merely one step in the collection of general taxes, and in the absence of a contrary legislative intent, clearly expressed, it must be held that the sole authority to make such sales is vested by existing laws in the county commissioners or representatives of the general taxing authority.

"In the recent case of *Sasse v. King County,* 196 Wash. 242, 82 P. (2d) 536, we said:

"'When a county purchases land at a general tax foreclosure sale, for want of other purchasers, the county takes and holds the land, not in its proprietary capacity, but in trust for the state and the various taxing municipalities within which the land lies. [Citing cases.]

"'A resale of the land by the county is but a part. of the statutory tax collecting process, which is not complete until such resale is finally made by the county, to the end that the proceeds thereof shall be justly apportioned to the various funds entitled thereto. [Citing cases.]'" *Commercial Waterway District No. 1 v. King County,* 197 Wash. 441, 85 P. (2d) 1067.

Except the defense of the statute of limitations, it is not seriously contended that appellants are not entitled to the relief they seek. It is clear that the defense of the statute of limitations is not available to respondent county, as the action was instituted by the waterway district in a governmental capacity to compel the performance of a statutory duty in the tax collecting process.

*Douglas County v. Grant County,* 98 Wash. 355, 167 Pac. 928, is not in point. That was an action by one county against a new county upon a liability created by a statute, requiring the assumption of a proportionate share of the old county's indebtedness, and is in no wise analogous to an action instituted by a taxing unit in a governmental capacity to compel the per-

formance of a statutory duty in the tax collecting process.

■■ An additional reason urged by appellants is that, in any event, the county was acting as trustee, where the rule of express trust is applicable. That is, where, as in the case at bar, a fiduciary relationship is shown to exist and the trust has been violated, the statute of limitations does not commence to run against the beneficiary of the trust until the defrauded party has actual knowledge of the termination of the fiduciary relationship, or acts done by the trustee which are hostile to the rights of the beneficiary and of which the beneficiary has actual knowledge, or of facts from which knowledge must be imputed to the beneficiary. In *New York Security & Trust Co. v. Tacoma*, 30 Wash. 661, 71 Pac. 194, we said:

"In considering the controversy, the relations of the city with the plaintiff must, we think, be controlling. The duty of the proper disbursement of its special improvement fund was imposed on the city. The general law requires the payment of these warrants in the order of their issuance. The charter of the city of Tacoma (1890), § 158, reads:

" 'All moneys received or collected by the treasurer upon assessments for improvements of streets, highways or alleys, shall be kept as a separate fund and in no wise used for any other purpose whatever except for redemption of warrants drawn against such fund.'

"It seems, under these provisions, that, so long as the relations constituted by them existed between the holder of the warrant and the city, the latter's duty was that of custodian of a trust fund; and, unless there was notice to plaintiff or knowledge by him of these changed relations, the bar of the statute ought not to attach. It appears the question presented here has been virtually determined heretofore, in *Potter v. New Whatcom*, 20 Wash. 589 (56 Pac. 394, 72 Am. St. Rep. 135). The statute of limitations was held not to run until notice or knowledge came to plaintiff. The

city there was described as sustaining a trust relation. In *Bidwell v. Tacoma*, 26 Wash. 518 (67 Pac. 259), there was misappropriation by the city of the money from a redemption fund applicable to the payment of delinquent tax certificates, and it was adjudged that the statute of limitations did not commence to run until demand for its payment had been made, or knowledge on the part of the plaintiff of refusal of the city to pay the amount, acquired."

There is an utter lack of evidence to support the finding that appellants had knowledge of the adoption of the resolution establishing the airport. The finding that appellants acquiesced in the appropriation of the tax foreclosed property by acceptance from the county out of county funds other than funds received from the sale of tax foreclosed property in payment on account of assessments due to appellant district for improvement of the property, is an erroneous conclusion.

The use by the county of the property as an airport, after having made extensive improvements, is not consistent with the holding by the county of the title in trust for the various taxing units interested in the proceeds from resale of the property. There is no evidence that the commissioners of the waterway district were aware that King county was holding title, other than as trustee, to the property against which waterway assessments were unpaid. That is to say, the record is bare of evidence that the commissioners of the waterway district knew that King county had assumed ownership over the tax foreclosed property, was claiming it in a proprietary capacity, and had improved the property as an airport.

Respondent did not sustain the burden incumbent upon it of proving that the waterway district had knowledge, which was essential to start running of the statute of limitations, of the use to which the

county was subjecting the tax foreclosed property, title to which the county was holding as a statutory trustee.

The only testimony on the subject of knowledge was that of one of the commissioners of the district during all of the time in question. He testified that he did not have any knowledge as to what assessments had been paid and what assessments had not been paid. This witness was not interrogated respecting his knowledge of the use by the county of the property as an airport.

Counsel for respondent argue that knowledge is imputable to the commissioners of the waterway district of the act of the county in acquiring the tax foreclosed property for an airport because of a payment by the county of twenty thousand dollars to the district and, subsequent to that initial payment, the district persistently insisted upon further payment from respondent county.

There is no evidence to sustain an inference that the commissioners were aware of the acts of the county and that the district was seeking to collect the assessments due to the district. We have read the testimony which is supposed to support respondent's argument on this phase of the case. All that is disclosed by that evidence is that the waterway district commissioners were not aware that the delinquent interest had not been paid to the district "until we started this suit." Instead of the commissioners of the district making specific demands, as argued by respondent, the only evidence on this subject is the testimony of one of the commissioners to the effect that he was not aware that the waterway commissioners ever had, prior to the commencement of this action, any knowledge of the situation.

The extent of the information brought home to the waterway district was that each month the treasurer

for the county issued a statement of the collections and disbursements made. There is nothing in these monthly statements which would inform, or charge with knowledge, the commissioners of the waterway district, or any bondholders who might have read those monthly statements, that the trustee county was misappropriating tax foreclosed property.

We are unable to find any statute — in the absence of such sanctioning statute, surely, it will be conceded the county is without authority—which vests the county with authority to itself determine by resolution of its board of commissioners that it is no longer holding title to tax foreclosed property in trust. The county is devoid of authority to repudiate the trust relationship created by the statute. If a county may not, by failure to improve tax foreclosed property held by it as statutory trustee, acquire a right to the property different from the one given to it by the statute— certainly none will in earnest contend it may—it would hardly be seriously insisted that, by the expenditure of its own funds to improve the property for use as an airport, the county could acquire any right different from the one given to it by the statute.

The judgment is reversed, and the cause remanded with direction to the trial court to grant to the appellants the relief for which they pray.

ROBINSON, C. J., STEINERT, BLAKE, MAIN, and JEFFERS, JJ., concur.

BEALS, J. (dissenting)—The various periods within which actions must be commenced after the cause of action arose are stated in Rem. Rev. Stat., § 155 [P. C. § 8160] *et seq.*, no statutory period of limitation being longer than ten years. Section 167 [P. C. § 8174] reads in part as follows:

"The limitations prescribed in this act (chapter) shall apply to actions brought in the name or for the benefit of any county or other municipality or quasi municipality of the state, in the same manner as to actions brought by private parties: . . . "

This section was enacted as chapter 24, Laws of 1903, p. 26.

Prior to the enactment of the statute just referred to, the law in force concerning the question here at issue was found in § 35 of the Code of 1881, which reads as follows:

"The limitations prescribed in this act shall apply to actions brought in the name of the territory, or any county or other public corporation therein, or for its benefit, in the same manner as to actions by private parties. An action shall be deemed commenced when the complaint is filed."

By the act of 1903, it was provided that no limitation should run against the state, a change in law which is immaterial, so far as the question here presented is concerned.

Appellants contend that the statute of limitations does not operate to defeat an action brought by appellant district in a governmental capacity to enforce the sovereign power of taxation, also arguing that the statute cannot here be urged as a defense, because respondent, since the tax foreclosure, has held title to the property in question in trust in connection with the collection of taxes, as provided by statute, for the benefit of appellant district and other taxing units. In this connection, appellant argues that the statute of limitations would not commence to run until the open repudiation of the trust by respondent, or the commission by respondent of acts hostile to, or in fraud of, the rights of beneficiaries of the trust, and of which appellants had actual knowledge, or of which knowledge must be imputed to them. Appellants argue that

they had no actual knowledge of the facts, and that such knowledge should not be imputed to them. They admit, of course, that respondent had established the airport, but contend, in effect, that they did not know that the property above referred to constituted a part of the airport.

Appellants cite the case of *Commercial Waterway District No. 1 v. King County*, 197 Wash. 441, 85 P. (2d) 1067, in which it was stated that a county takes title to property through tax foreclosure, not in its proprietary capacity, but in trust for the state, for itself, and for other taxing municipalities which are interested.

In the case of *Gustaveson v. Dwyer*, 78 Wash. 336, 139 Pac. 194, 83 Wash. 303, 145 Pac. 458, cited by the majority, it was held that a county holds, in a governmental capacity, property which it has acquired through tax foreclosure proceedings. The case cited was twice argued before this court, first to a department thereof, an opinion having been rendered affirming the judgment appealed from, and later to the court sitting *En Banc*, after which another opinion was written, by which the result reached by the department was affirmed for somewhat different reasons. It appeared that Gustaveson, the plaintiff, instituted the action for the purpose of recovering possession of a tract of real estate which the defendant was holding under a claim of right, based upon alleged adverse possession for the statutory period. The court cited § 167 of the code, *supra*, and held that the statute of limitations did not run in favor of the defendant's claim based upon adverse possession while the title to the land rested in the county in trust for the state and other political subdivisions.

In the opinion rendered after the hearing before the court *En Banc*, it was held that the county acquired

the land through the tax foreclosure, in its governmental capacity, as distinguished from its proprietary capacity, and that the statute of limitations would not run against the county, acting in its governmental capacity. The court cited the case of *West Seattle v. West Seattle Land & Improvement Co.*, 38 Wash. 359, 80 Pac. 549, in which it was held that adverse possession by a private individual, of property within the boundaries of a public highway, would not operate to divest the title of the municipality. In the *West Seattle* case, the statute above cited, providing that the statutes of limitation operate against a county or municipal subdivision thereof, was not mentioned. In referring to the *West Seattle* case, this court, in the second opinion filed in the *Gustaveson* case, said:

"While our general statute of limitations applies to actions by or for the benefit of counties and other municipalities (Rem. & Bal. Code, § 167; P. C. 81, § 79), it has been held that the statute does not apply as against a municipality so as to permit the acquisition of title by adverse possession to a portion of a street within the municipality. *West Seattle v. West Seattle Land & Improvement Co.*, 38 Wash. 359, 80 Pac. 549."

This was the effect of the *West Seattle* case, even though the statute was not referred to therein.

In the second opinion in the *Gustaveson* case, many authorities are cited, the court deciding that the general statute of limitations, though by its terms applicable to counties, does not run against the county in favor of an adverse possessor of land acquired through tax foreclosure, while the title is vested in the county, for the reason that the county holds the land in its governmental capacity.

Appellants argue, in support of their contention that they should prevail in this action, that the district is acting in its governmental capacity, and that its right is not barred by the statute of limitations.

The *West Seattle* and *Gustaveson* cases were correctly decided. To permit the title of a county or a city, to land embraced within the boundaries of public streets, to be defeated by prescriptive rights gained by adverse possession, or to permit the title of a municipal corporation, to land which it owns in its governmental capacity, to be so defeated, impinges upon the basic processes of government. The rights here sought to be enforced by appellants more nearly resemble those involved in a fiscal accounting between municipal subdivisions of the state. Whether respondent converted the property or the proceeds, the situation would be the same. *Brown v. Board of Education,* 148 Okla. 97, 298 Pac. 249; *Los Angeles v. Los Angeles County,* 9 Cal. (2d) 624, 72 P. (2d) 138, 113 A. L. R. 370.

In the early case of *Citizens' Nat. Bank v. Lucas,* 26 Wash. 417, 67 Pac. 252, 56 L. R. A. 812, 90 Am. St. 748, this court, referring to our statutes of limitation, said:

"It seems to us that the legislature in the passage of this act attempted to provide a limitation for every kind of action that could be brought in the courts."

In the case of *Douglas County v. Grant County,* 98 Wash. 355, 167 Pac. 928, this court referred to the portion of the opinion in the case last cited which we have just quoted, and held that an action by Douglas county against Grant county, based upon the act of the legislature constituting the defendant county and providing that the county should pay to Douglas county a certain proportion of the bonded and warrant indebtedness incurred by Douglas county prior to the division (Laws 1909, chapter 17, p. 19, Rem. Rev. Stat., § 3937 [P. C. § 1521]), was barred by the two-year statute of limitations. Rem. Rev. Stat., § 165 [P. C. § 8172]. The plaintiff, Douglas county, based its claim directly

upon an act of the legislature, but, notwithstanding that fact, this court held that the action was barred by the statute.

If one converts county funds or property of which he is official custodian, the statute of limitations operates in his favor. It is not easy to understand why a different rule should apply in case of wrongful appropriation by another governmental agency. In this connection, the supreme court of Oklahoma, in the case of *Brown v. Board of Education, supra,* said:

"The contention of the plaintiff amounts in law to this: If the county treasurer had personally used the funds of the plaintiff, then the three-year statute of limitations would apply; however, if the county treasurer, instead of personally appropriating the money, passed it over to the credit of the county, and the county used the money, the statute of limitation never applies. We do not understand the logic of the difference.

"We think that the right of the plaintiff to recover in this case must be inherent within itself and is not dependable upon the identity of the defendant."

It may be assumed that the statute would not run against the lien of assessments levied by appellant district, so long as such assessments stand upon the books of the county treasurer, but that is not the situation here. Respondent has acquired the property through tax foreclosure proceedings. Appellant district is not, in this action, seeking to enforce any lien in its favor.

In the recent case of *State ex rel. Seattle v. King County,* 4 Wn. (2d) 589, 104 P. (2d) 575, we said: "All taxes are canceled by force of the statute (Rem. Rev. Stat., § 11293) with vesting of the title in the county." See, also, quotation from the same case, supra.

After the sale of the property by the county, appel-

lant district would be entitled to receive a proportion of the proceeds of the sale. It might receive its assessments in full, or it might receive only a portion thereof. No question is here presented as to the operation of the statute of limitations against any claim which appellant district may have if at any time in the future the county sells the property now embraced within the airport.

I am convinced that it should be held that Rem. Rev. Stat., § 167, *supra,* applies to appellants' cause of action.

Appellants contend that, even though it be held that the statute of limitations applies, the trial court erred in holding that, under the circumstances of this case, the action was barred by the statute. In support of this contention, it is argued that it does not appear that the commissioners of appellant district knew that respondent had assumed ownership over tax foreclosed property against which the district had unpaid assessments, or that respondent had improved such property as a portion of its airport. As above stated, appellants had pleaded lack of knowledge of these facts on their part, until a short time prior to the institution of the action. Basing their argument upon the proposition that respondent held title to the property in trust, appellants contend that the statute did not begin to run until knowledge on their part of the breach of trust.

The trial court found that appellants knew of the adoption of the resolution by the commissioners of respondent, and that respondent had improved the property by the construction of the airport. Appellants argue that this finding is not supported by the evidence. Appellants' allegation of lack of knowledge on their part was denied by respondent in its answer, and I fail to find in the record evidence which supports appellants' allegation of lack of knowledge.

In the case of *Noyes v. Parsons,* 104 Wash. 594, 177 Pac. 651, this court said:

"A general allegation of ignorance at one time and knowledge at another is of no effect. *Hardt v. Heidweyer,* 152 U. S. 547. In order to excuse a want of knowledge of the fraud, a pleading must set forth what were the impediments to an earlier prosecution of the claim, how the pleader came to be so long ignorant of his rights, the means, if any, used by the opposing party fraudulently to keep him in ignorance, or how and when he first obtained knowledge of the matter alleged in the pleading. *Pearsall v. Smith,* 149 U. S. 231."

The case of *Teeter v. Brown,* 130 Wash. 506, 228 Pac. 291, is to the same effect.

It is the general rule that one seeking to bring himself without the operation of the statute of limitations must bear the burden of proving facts which show that the statute should not operate. 2 Jones on Evidence (2d ed.) 1026, § 559. This court has followed the rule in several cases. *Conaway v. Co-operative Homebuilders,* 65 Wash. 39, 117 Pac. 716; *Roberts v. Pacific Tel. & Tel. Co.,* 93 Wash. 274, 160 Pac. 965; *Davis v. Rogers,* 128 Wash. 231, 222 Pac. 499; *Reeves v. Davis & Co.,* 164 Wash. 287, 2 P. (2d) 732; *Bay City Lumber Co. v. Anderson,* 8 Wn. (2d) 191, 111 P. (2d) 771.

One of the commissioners of appellant district testified that each month the county treasurer issued a statement of collections and disbursements, but this is far from supporting appellants' contention of lack of knowledge on the part of the district's officers, concerning the action of respondent in establishing the airport and in including within the boundaries thereof certain lands, against which were unpaid assessments in favor of the district. The action of the county commissioners in establishing the airport by resolution, is

matter of public record, and it is admitted that appellant district not long thereafter received from respondent a large payment on account of assessments against property included within the airport.

I am convinced that appellants are not entitled to prevail on this appeal because of any supposed lack of knowledge on their part of the proceedings of the county commissioners in establishing the airport, and including therein the tracts of land against which appellant district, prior to the tax sale to the county, had liens for unpaid assessments.

In my opinion, the judgment appealed from should be affirmed, and I accordingly dissent from the conclusion reached by the majority.

SIMPSON and DRIVER, JJ., concur with BEALS, J.