**BOARD OF COUNTY COMMISSIONERS OF CHOCTAW COUNTY, Oklahoma, and Lawrence Massengale, County Treasurer of Choctaw County, Oklahoma, Plaintiffs in Error,**

v.

**Jimmie E. SCHUESSLER and Zoe Schuessler Lee, Defendants in Error.**

**No. 38901.**

Supreme Court of Oklahoma.

Dec. 13, 1960.

Rehearing Denied Jan. 24, 1961.

Ralph K. Jenner, County Atty., of Choctaw County, Hugo, for plaintiffs in error.

Hal Welch, Hugo, for defendants in error.

BERRY, Justice.

The parties who appear here in reverse order to their appearance below, will be referred to herein as they appeared in the trial court.

In this action plaintiffs seek to quiet their title as to defendants (and others who are not parties to this appeal) to the following described land lying in Choctaw County, Oklahoma:

> SW/4 of Sec. 2; and SE/4 of NW/4; SW/4 of NE/4; W/2 of NE/4 of NE/4; E/2 of NW/4 of NE/4; and SW/4 of NW/4 of NE/4, Sec. 10, all in Twp. 5 South, Range 13 East.

From order of the trial court denying defendants' motion for a new trial, which was directed to a judgment in plaintiffs' favor, defendants appeal.

Plaintiffs base their asserted title to the above described property upon a sale of same by Choctaw County to Carl Schuessler following the former's acquisition of

the property at a tax resale. The deeds issued pursuant to the sales were under date of July 2, 1951, which deeds were recorded by agents of Choctaw County prior to being delivered to Schuessler. Schuessler acquired the land in order to convey same to plaintiffs. The conveyances to plaintiffs were apparently made in 1951. Plaintiffs have been in possession of the land in controversy since 1951.

In each of the referred-to deeds it was provided in substance that Choctaw County reserved one-fourth of the minerals underlying the land and 25 feet on each side of the section line for road purposes. Defendants assert that said reservations are valid and that neither Schuessler nor plaintiffs acquired title to property rights so reserved.

On June 2, 1947, which was after the above described land had been first sold to Choctaw County for delinquent ad valorem taxes, the Board of County Commissioners of Choctaw County (hereafter referred to as "Commissioners") promulgated a resolution to the effect that from and after said date a one-fourth interest in all minerals underlying lands acquired from Choctaw County by a resale tax deed would be reserved by said County. The resolution was entered on the "Journal" of the County Clerk. No mention of intent to reserve a right-of-way in lands sold by the County at resale was made in this or any other resolution.

Defendants contend that it was within the power and province of the Commissioners to promulgate the referred-to resolution. In support of said contention, defendants cite 19 O.S.1951 §§ 1, 2, 3, 339, 342, 343, 344, which statutes treat generally with the powers of counties and the commissioners thereof, and 68 O.S.1951 §§ 432i and 432j, which statutes treat with the powers and duties of commissioners relative to management of property acquired by a county pursuant to resale thereof and to the subsequent sale of same. Defendants stress the provisions of Sec. 1, supra, to the effect that each county is a body corporate and as such is empowered "to sell and convey any real or personal estate owned by the county, and make such order respecting the same as may be deemed conducive to the interest of the inhabitants". After referring to Secs. 342, 343 and 344 granting commissioners the power to sell unused land of counties, defendants refer to Secs. 432i and 432j, supra, and conclude, as we understand defendants' argument, that since the county owned the land in controversy it could, upon sale of same, reserve the property rights which it attempted to reserve.

Defendants contend further that plaintiffs at no time had title to the interest in the land that commissioners sought to reserve, and for said reason cannot maintain this action as to defendants. Defendants refer to the fact that said interests were reserved in the deed to Schuessler and that Schuessler in his deed to plaintiffs excepted the interests. The last referred-to deed is not in evidence, and the foregoing contention based thereon was neither raised nor presented in the trial court. On repeated occasions we have held that in considering issues presented on appeal, we are confined to the record. See Progress Brewing Co. et al. v. Thompson et al., 203 Okl. 415, 222 P.2d 748, and cited cases.

The defendants also contend that plaintiffs' action is barred by the statutes of limitation.

Plaintiffs contend that the Commissioners were without power or authority to promulgate the referred-to resolution or to reserve the property rights sought to be reserved in the deed to Schuessler and that said rights were therefore conveyed to Schuessler by the resale tax proceedings; that assuming the Commissioners had such power and authority, defendants are not in a position in the instant case to assert same for the reason that (a) in the notice published relative to the sale by the county it was not indicated that the property rights in controversy would be reserved; that (b) at the time the property was sold no announcement was made relative to reserving

said rights; that (c) in the report of the sale no mention was made of property rights being reserved; and that (d) "The resolution of the Board of County Commissioners approving the sale, was without limitation and further specifically directed the execution of a deed: 'conveying the foregoing described property to Carl Schuessler, in as full and complete manner as the County is authorized to convey it'". Plaintiffs further contend that their action is not barred by the statutes of limitation.

It is not claimed that the Commissioners had express statutory authority to either promulgate the resolution or to reserve the property rights that defendants here assert were reserved.

Defendants' contention on the basic issue of whether the Commissioners had power and authority to reserve the property rights that it is here asserted were reserved, is apparently based upon the proposition that while the Commissioners are not by statute expressly granted such power and authority, the statutes cited by defendants develop that Choctaw County is in fact the fee simple owner in its proprietary capacity of all property which Choctaw County acquires at resales, and as the owner, upon resale of same, may reserve any rights therein that the Commissioners wish to reserve. Defendants in their brief suggest "that the reservations made by (the Commissioners) in the deed *was* just as effective as if you or I, as individuals, had made the reservation."

■ The primary purpose of our ad valorem tax statutes relating to delinquent ad valorem tax liens and the sale of property in satisfaction of such liens, is to recover delinquent ad valorem taxes for the benefit of all political sub-divisions of the State which are entitled to share in such taxes and not to place a county in a position where it can acquire, in its proprietary capacity, fee simple title to property that it may acquire at such sales. The title acquired by the county at such sales is terminable by (a) the delinquent taxpayer timely paying taxes and interest thereon

(68 O.S.A. § 430 et seq.); by (b) resale of the property to a third person following expiration of the redemption period (68 O.S.1951 § 432); or by (c) sale of the property to a third person following acquisition thereof by the county at a resale (Sec. 432j, supra).

■ It is provided in part in Sec. 432, supra, that if property purchased by the county is not timely redeemed, "the County Treasurer shall proceed to sell such [property] at resale". In the event the property is bid in by the county at such sale and a bid therefor is subsequently tendered (as was done in the instant case), it is apparently incumbent upon the county to advertise the property for sale and sell same to the highest bidder at said sale (See 432j, supra) provided the bid is satisfactory. The fact that the Commissioners are authorized by the last cited statute to reject bids does not, to our way of thinking, indicate that the Legislature intended that by rejecting bids a county may thus obtain, in its proprietary capacity, fee simple title to property which it offers for sale. To the contrary. This provision was no doubt inserted in order to avoid the sale of property for a nominal amount.

It is made clear in 68 O.S.1951 §§ 432e and 432l that the several political sub-divisions of the State which would be entitled to share in ad valorem taxes levied on the property, are entitled to share in part in the proceeds accruing from the resale of property acquired by a county. This tends to show that the Legislature did not intend that a county be considered as owning the absolute fee simple title to property that it acquires at a tax resale.

It was stated in part in the fourth paragraph of the syllabus to State ex rel. Commissioners of Land Office v. Passmore et al., 189 Okl. 232, 115 P.2d 120, 136 A.L.R. 324 that "The title acquired at a tax resale by the county in the name of the Chairman of the Board of County Commissioners is held exclusively for the benefit of the county and the political sub-divisions thereof."

In Commercial Waterway Dist. No. 1 of King County et al. v. King County, 10 Wash.2d 474, 117 P.2d 189, a county which had acquired property because of a sale thereof for delinquent ad valorem taxes, asserted the right to use the property for airport purposes. In rejecting said contention, the court pointed out that the county did not hold the property in its proprietary capacity but in trust for the various taxing units ordinarily entitled to share in ad valorem taxes levied on the property; that a resale of the property so acquired was but a part of the statutory process for collecting taxes which is not complete until the property is resold by the county and the proceeds of the sale are apportioned to the several taxing units which were entitled to share therein.

This was said in Arizona Title Guarantee & Trust Co. v. State et al., 60 Ariz. 555, 142 P.2d 212, 213:

> "(2) Under this holding the tax title acquired by the state becomes vested in the state, not in its proprietary capacity but in trust for the state and for the other taxing municipalities or units within which the land is situated, with the power and obligation on the part of the state to sell the land and fairly apportion the proceeds to the state, municipal and other funds entitled thereto. We think this is decisive of the question here raised. Lands, the title to which become vested temporarily in the state through tax proceedings, are not grants to the state, nor does the state 'acquire' title thereto except in its governmental capacity as a tax collector."

The powers granted and the duties placed upon Commissioners under the provisions of Sec. 432j, supra, relative to the care and management of property acquired by a county because of delinquent ad valorem taxes, do not differ from the powers and duties ordinarily imposed upon trustees who as such hold legal title to property. The provisions of the cited statute and of other statutes which relate to the powers and duties of commissioners in connection with such property tend to develop that the Legislature intended that commissioners conserve such property; that upon sale thereof, a fair price considering the status of the county's title be realized, and that all interested taxing units share in part in the proceeds of the sale.

■ As to the strip reserved for right-of-way purposes, it is not claimed that Schuessler had notice that Choctaw County would reserve said strip until after the sale proceedings had been concluded and the deed to Schuessler had in fact been recorded by others. In view of said fact and the further fact that said strip was in fact sold, Schuessler and plaintiffs as his successors in title cannot be deprived of said property right by the deed which in effect only evidences the sale.

■ As to the mineral reservation, defendants assert that the recording of the resolution served to give Schuessler constructive notice that one-fourth of the minerals would be reserved by the county. Defendants have not cited a statute which either provides for or contemplates the adoption or a resolution to the effect of the resolution before us or which provides for the recording of such a resolution. It appears to be settled law that constructive notice is a creature of statute, and that no record will operate to give constructive notice unless such effect has been given it by some statute. See Johnson et al. v. Farmers' Union Co-op. Royalty Co. et al., 205 Okl. 478, 238 P.2d 831. We are, therefore, of the opinion that Schuessler cannot be said to have had constructive notice of the contents of the resolution, and since he did not have such notice what we have said relative to the attempt to reserve a right-of-way strip is applicable to the attempt to reserve one-fourth of the minerals.

In discussing the effect of the provisions of the tax deed relative to the reservations, plaintiffs point out that the court held in Monsour v. Vahlberg, 188 Okl. 476, 110 P.2d 595, that the fact that the tax deed there

under consideration did not provide that the issuance of the deed served to satisfy all delinquent taxes, etc., did not prevent said provision of the statute from becoming operative, and that the deed served to vest in the purchaser "an absolute and perfect title in fee simple to" the property sold.

■ The statute under consideration in the last cited case was 68 O.S.1951 § 432f, which statute provides in part that the resale tax deed "shall vest in the grantee an absolute and perfect title in fee simple to said lands." This statute does not directly relate to a sale such as was had in the instant case. The statute which directly relates to such sales is Sec. 432j, supra. It is provided in part, in said statute that "upon approval of such sale as hereinbefore provided the Chairman of the Board of County Commissioners shall execute a deed conveying title to the purchaser of such property in as full and ample manner as by law provided, such deed to be on a form prescribed by the State Examiner and Inspector." It is not contended that the deed prescribed by the State Examiner and Inspector is so drafted that reservations are contemplated. While the word "title" has a variety of meanings, a meaning commonly placed on said word is complete ownership. See State ex rel. Mitchell v. State Highway Commission, 163 Kan. 187, 182 P.2d 127, 136. In view of the quoted provisions of Sec. 432f, supra, and the wording of Sec. 432j, supra, we are of the opinion that in using the word "title" in the last cited statute, the Legislature intended that a purchaser at a sale such as is before us, acquire a fee simple title to the property sold. We are, therefore, of the opinion that under the facts of this case the county sold and Schuessler received, as to the county, a fee simple title to the property without exceptions or reservations of any kind.

■ In view of the fact that plaintiffs have been in possession of the land in controversy since shortly after same was sold to Schuessler, we are of the opinion that plaintiffs' action is not barred by the statutes of limitation. See Hester v. Watts, 203 Okl. 97, 218 P.2d 641.

Affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, JOHNSON, BLACKBIRD and IRWIN, JJ., concur.

JACKSON, J., concurs in result.